Jasper VARGAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–93–013–CR.

Court of Appeals of Texas,
Corpus Christi.

June 23, 1994.

Rehearing Overruled Aug. 11, 1994.

Antonio Rodriguez, Pharr, for appellant.

Rene Guerra, Dist. Atty., Theodore C. Hake, Cynthia A. Morales, Rebecca Pool, Asst. Dist. Attys., Edinburg, for appellee.

Before SEERDEN, C.J., and GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

A jury found appellant guilty of possessing between 50 and 200 pounds of marihuana and assessed punishment at 25 years' confinement. By his first three points of error, appellant complains that the trial court erred by denying his motion for instructed verdict, and that the evidence is insufficient to support his conviction as a principal and a party. By his fourth point of error, appellant complains that the trial court erred by failing to refer his motion to disqualify to the presiding judge of the administrative district. We affirm the judgment of the trial court.

■ By his fourth point of error, appellant contends that reversible error occurred when Judge Virgil Mulanax, a visiting judge assigned to the 370th District Court, failed to refer to the presiding judge of the administrative district appellant's "Motion to Disqualify the Judge Sitting in the Hidalgo County Drug Court from Hearing Matters Objecting to Jurisdiction of the Drug Court." Appellant asserts that Mulanax's failure to refer the motion is contrary to the mandatory referral provisions of TEX.R.CIV.P. 18a–b (Vernon Supp.1994) and TEX. GOV'T CODE ANN. § 74.059(c)(3) (Vernon 1988); see Arnold v. State, 853 S.W.2d 543, 544 (Tex.Crim. App.1993); DeBlanc v. State, 799 S.W.2d 701, 705 (Tex.Crim.App.1990), cert. denied, 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991).[1] We find no reversible error.

Appellant's indictment was filed in the 370th District Court of Hidalgo County on February 13, 1992. Judge Fidencio Guerra is the presiding judge of the 370th District Court. On March 16, 1992, Judge Virgil

---

1. The trial judge, upon the filing of a motion to recuse, shall request the presiding judge of the administrative district to assign another judge to hear a motion to recuse. TEX. GOV'T CODE ANN. § 74.059(c)(3). TEX.R.CIV.P. 18a(c) requires the judge to either recuse himself or refer the motion to the presiding judge of the administrative district before proceeding any further in the case.

Mulanax, sitting as a visiting judge in the 370th District Court, granted several of appellant's discovery motions and denied two motions relevant to this point of error. One motion was entitled "Objections to the Jurisdiction of Auxiliary Court and Motion to Retain Jurisdiction in the Court of Record." This motion alleged that the District Judges of Hidalgo County had created a "narcotics court" and that, for various reasons, such court violated several provisions of the United States and Texas Constitutions. The second motion was entitled "Motion to Disqualify the Judge Sitting in the Hidalgo County Drug Court from Hearing Matters Objecting to Jurisdiction of the Drug Court." This second motion stated:

COME NOW THE DEFENDANTS, GILBERT AND JASPER VARGAS, by and through their attorney of record, Antonio Rodriguez, and move the Court to rcuse (sic) the Judge currently presiding over the Drug Court in and for Hidalgo County, Texas and in support of his motion would show the following:

(1) The Visiting Judge currently presiding over the Drug Court is being paid for his services in presiding over said Court.

(2) The payment for the Judge's services in the Drug Court gives him a pecuniary interest in the results of any ruling on any motion objecting to the jurisdiction of the Drug Court in that he would not be paid for his services if the Drug Court was found to have no jurisdiction. The fact that the Visiting Judge may gain or lose by the nature of the judgment in this case is sufficient pecuniary interest to disqualify him from hearing a motion as to the Drug court's jurisdiction. *See, Chastain v. State,* 667 S.W.2d 791, review refused, Texas State Constitution, Art. 5, Section 11.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the Court grant this their Motion to Disqualify Visiting Judge from hearing any Motion Objecting to the Jurisdiction of the Drug Court.

The motion was not verified, and, therefore, did not comply with the procedural requirements of Tex.R.Civ.P. 18a. Nonetheless, some sort of proceedings were held before Judge Mulanax regarding the motion. We do not know exactly what occurred, because defense counsel requested that the statement of facts show only the following:

(EXCERPT)

THE COURT: Do you have anything additional on your motion to disqualify and the objection to the jurisdiction.

DEFENSE COUNSEL: Your Honor, I shall let the motions speak for themselves.

(EXCERPT)

THE COURT: The motion as to the jurisdiction and disqualifying the judge will be denied.

As appellant requested only a partial statement of facts from the hearing, we are unable to determine the specific reasons for Judge Mulanax's ruling. After ruling that the court had jurisdiction and that he was not disqualifying himself, Judge Mulanax apparently took no further action in the case.[2]

The record reflects that appellant initially went to trial five months later, but that the first trial ended in a mistrial on August 18, 1992. Thereafter, Judge Guerra ruled on some motions. Finally, on August 26, appellant was tried and found guilty with Visiting Judge Benjamin Martinez presiding. Appellant was sentenced on September 14. Visiting Judge K. Baker signed the trial court's judgment on September 17, 1992.

We focus initially on appellant's "motion to disqualify" and determine that it was not a motion to disqualify Judge Mulanax from the case. The Texas Constitution and the Code of Criminal Procedure address disqualification. Article V, section 11 of the Texas Constitution provides that:

No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case. . . .

2. The record does not reflect any further rulings by Judge Mulanax. Appellant has the burden of bringing a record showing error requiring reversal. Tex.R.App.P. 50(d).

The Code of Criminal Procedure provides that:

> No judge or justice of the peace shall sit in any case where he may be the party injured, or where he has been of counsel for the State or the accused, or where the accused or the party injured may be connected with him by consanguinity or affinity within the third degree, as determined under Article 5996h, Revised Statutes.

TEX.CODE CRIM.PROC.ANN. art. 30.01 (Vernon Supp.1994).

■ The grounds for disqualification of a judge that are stated in the Texas Constitution and the Code of Criminal Procedure are exclusive. *Williams v. State*, 492 S.W.2d 522 (Tex.Crim.App.1973); *McDuffie v. State*, 854 S.W.2d 195 (Tex.App.—Beaumont 1993, pet. ref'd). Appellant's motion was directed generally against any judge presiding over the "Drug Court." Appellant did not assert that Judge Mulanax had any interest in the outcome of the case, had been counsel for one of the parties, or was related to the victim or defendant. Appellant asserted generally that any judge of the Drug Court had an interest in the outcome of the motion because, according to appellant, the visiting judge would not be paid for his services if he ruled that the Drug Court had no jurisdiction. As such, the motion did not raise an issue specifically of Mulanax's qualifications to preside in the case. In fact, appellant had no objection to Mulanax ruling on his discovery motions, and it appears appellant would have been satisfied to have Mulanax preside in the case, except with respect to the jurisdictional motion. Thus, we conclude that appellant was not alleging that Mulanax was constitutionally disqualified or disqualified under the Code of Criminal Procedure.

■ We then turn to the issue of whether appellant's motion was a recusal motion. At the outset, we note that appellant's motion, rather than seeking to recuse a particular judge for financial interest, sought to recuse a class of judges, i.e., visiting judges, from hearing the jurisdictional motion on pecuniary interest grounds. For argument's sake, we will assume that the motion was sufficient to state grounds for recusal under TEX.R.CIV. PROC. 18b(2).[3] Since Rule 18a addresses the procedural aspects of recusal motions, we turn to appellant's motion to see if it complied procedurally with Rule 18a's requirements. We find that it did not.

Rule 18a(a) requires, in part, that the motion be verified and state with particularity the grounds why the judge before whom the case is pending should not sit. Appellant's motion was not verified. The State asserts that, as the motion was defective procedurally, the mandatory referral provisions were not triggered. We agree.

While it has been held in civil cases that a ruling on the merits of a recusal motion must be made by a judge other than one whose recusal is sought, even if the motion is procedurally defective, *Carson v. McAdams*, No. 01–93–472–CV, slip op. at 2, 1993 WL 282644 (Tex.App.—Houston [1st Dist.], July 29, 1993, orig. proceeding) (pub. pending); *Carson v. Gomez*, 841 S.W.2d 491, 493 (Tex. App.—Houston [1st Dist.] 1992, no writ), the Court of Criminal Appeals has held that a trial judge may make an initial determination that the recusal motion is not in compliance with Rule 18a(a). *See Arnold*, 853 S.W.2d at 544–45 (no error in not referring motion filed untimely); *McClenan v. State*, 661 S.W.2d 108, 110 (Tex.Crim.App.1983) (Before the referral rule "is brought into play in criminal cases an obvious prerequisite is that the motion must be prima facie adequate."); *see also McDuffie*, 854 S.W.2d at 201.

We hold that the motion did not comply with Rule 18a because it was not verified. Judge Mulanax did not err by failing to refer the motion to the presiding judge of the administrative district. Appellant's fourth point of error is overruled.

---

**3.** We are inclined to hold that the motion was not sufficient because we believe that a motion to recuse must be directed against and actually name a specific judge, not a class of judges. Nevertheless, we will assume the motion is adequate in this regard and that it states grounds for recusal under Rule 18b. Specifically, Rule 18b(2) provides that a judge shall recuse himself in any proceeding in which: (a) his impartiality might reasonably be questioned; or (b) he has personal bias or prejudice concerning the subject matter . . . .

By his first three points of error, appellant challenges the sufficiency of the evidence supporting his conviction either as a principal or as a party. Appellant contends that the State failed to establish any affirmative links, beyond mere presence, between appellant and the contraband found in the mobile home in such a manner that it can be concluded he had knowledge and exercised "care, custody or control" over it. Appellant also contends that there was no evidence that he "aided, assisted or promoted" the possession of the marijuana.

Sgt. Ronald D. Brooks, an investigator with the Texas Department of Public Safety Narcotics Service (DPS), testified that surveillance on the activities of codefendant Ken Harris and appellant first began in late 1990. In November 1991, Brooks arrested Harris for possession of approximately ten pounds of marijuana. Harris expressed a willingness to assist law enforcement officers in exchange for leniency in the prosecution of his case. Harris agreed to help the police by providing names and other information on major drug traffickers in the Rio Grande Valley, and to keep the police informed at all times of his whereabouts.

For the next couple of weeks, Harris called Brooks and let him know that he had arrived from Arkansas to visit with some people. Brooks, however, began to suspect that Harris was not being completely honest when Harris failed to provide concrete information on the individuals he was associating and travelling with. In late November or early December 1991, approximately five weeks after his arrest, Harris was put under surveillance after he informed DPS that he was travelling back to Arkansas. Surveillance revealed that Harris had not returned to Arkansas. Harris was followed to a residence in Alton where he was observed meeting with appellant and appellant's brother. The three then performed mechanical work on Harris' Blazer. After approximately two hours, the surveillance was terminated. DPS, however, continued periodic surveillance on appellant's activities.

On December 17, 1991, Brooks observed appellant leaving the residence accompanied by two women in a brown and tan Chevrolet pickup truck. Brooks followed them to the Mission West Recreational Vehicle (RV) Park, located west of Mission. They stopped at an RV motor home with Arkansas license plates parked in lot 42. Appellant unlocked and entered the RV, and the three were observed cleaning the motor home for about an hour and a half. They then returned to the pickup truck and drove back to the Alton residence.

On or about December 19, while conducting an investigation on a different case, Brooks observed Harris' vehicle at a Roadway Inn in McAllen. A few days later, Harris was again seen at the same motel together with two individuals later identified as Faulkner and Brock. Brooks tried to follow Harris' vehicle after it left the motel, but was unsuccessful. DPS agents looked for the vehicle at the Mission West RV park, and found that the RV was no longer parked on lot 42.

On the morning of December 20, Brooks found the RV parked at the residence of Gilbert Vargas, appellant's brother. Gilbert's residence is located on the northeast corner of a small subdivision west of Mission. The subdivision only has one entrance. Four or five DPS agents then started surveillance on the Gilbert's residence and the RV motor home. Brooks took a position where he could watch the back door of the residence, the space between the residence and the motor home, and the door of the motor home.

At approximately 8:30 a.m. on December 21, Brooks observed appellant, Harris, Brock, Faulkner, and appellants' brothers, Gilbert and Ernesto Vargas, at the residence. Appellant's brothers worked on the RV's motor, while Faulkner, Harris, Brock and appellant went in and out of the motor home. Brooks observed Gilbert Vargas retrieve a large piece of paneling or "plexiglass with the brown paper still on it" and take it into the RV. Sometime around noon, Harris, Faulkner and Brock left, and the Vargas brothers stayed and barbecued in the backyard. Nobody entered the RV after Harris left. Harris, Faulkner and Brock returned at approximately 7:00 p.m., and then activity around the RV increased. Appellant and Faulkner were seen primarily inside the motor home,

while Harris, Brock and appellant's brothers remained on the back porch. Appellant and Faulkner appeared to be very busy hammering and working inside the right back portion of the RV.

Harris and Ernesto Vargas then left the residence in a gray pickup truck registered to Gilbert Vargas. DPS followed the vehicle into the Peñitas area. Harris and Ernesto returned to Gilbert's residence approximately forty-five minutes later. As they pulled up into the yard, close to the back of the motor home, the persons in the background were seen excited. Ernesto was observed carrying a large heavy bundle about the size of a television set. Harris opened the motor home door and Ernesto dumped the bundle inside. Faulkner and appellant were inside the motor home, where a flurry of activity, lights, and movement were observed. Brooks saw appellant holding a flashlight while Faulkner performed some carpentry work in the right rear portion of the motor home.

At approximately 10:00 p.m., Brooks advised the surveillance team that he thought there was contraband at the residence and that they should convert to an arrest team. At the time, however, the surveillance team was down to about three agents, so arrangements were made to get more agents to make the arrest. Brooks left his position to meet with the agents at a nearby church parking lot. Brooks then realized that no one was watching the subdivision entrance. He drove to the entrance, parked, and retrieved his bullet-proof vest from his vehicle. Brooks then observed Harris' red and white Blazer exit the subdivision and turn east towards Mission. Harris, Faulkner and Brock were seen inside the Blazer. With the assistance of uniformed DPS troopers, Brook made a traffic stop and arrested Harris, Faulkner and Brock.

Brooks and the troopers went immediately to Gilbert's residence. Upon their arrival, they found that everyone had left. They entered the motor home and conducted a short search. They removed the paneling of the right back portion of the RV and found a hidden compartment which contained the large bundle that Ernesto Vargas was seen carrying into the motor home. The motor home was driven from the residence and impounded. The arrest team left the location without making a warrantless search of the house.

The record shows that appellant was not arrested until January 13, 1992. No contraband was found on his person at the time of his arrest.

After the State rested, the defense called appellant's cousin, Daniel Hirle, to the stand. Hirle testified that on December 21, 1991, appellant had attended a barbecue which was held at Hirle's ex-boss's house. According to Hirle, appellant arrived at the barbecue between 4:00 p.m. and 4:30 p.m. and stayed until sometime between 11:00 p.m. and 12:00 midnight. Hirle recalled the December 21 barbecue because it was his ex-boss' Christmas party. Appellant did not testify.

The indictment states, in pertinent part, that appellant,

> on or about the 21st day of December A.D., 1991, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there intentionally and knowingly possess a usable quantity of marihuana in an amount of more than fifty (50) pounds but less than two hundred (200) pounds....

The court instructed the jury on the law of parties, as follows:

> Each party to an offense may be charged with the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.
>
> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.
>
> In this connection, you are further instructed that mere presence alone will not constitute one a party to the offense charged; and so to warrant a conviction for the offense charged, the State must

prove beyond a reasonable doubt that the Defendant acted with intent to promote or assist the commission of the offense, if any, by encouraging, soliciting, directing, aiding or attempting to aid another in the commission of the offense, if any, and unless you so find beyond a reasonable doubt or have a reasonable doubt thereof you will acquit the Defendant and say by your verdict not guilty.

See TEX.PEN.CODE ANN. § 7.01(a), 7.02(a)(2) (Vernon 1974). The court then instructed the jury on possession of marihuana, allowing the jury to find appellant guilty if they found beyond a reasonable doubt that he did

... intentionally or knowingly possess a usable quantity of marihuana in an amount of more than fifty (50) pounds but less than two hundred (200) pounds,...., or

... intentionally or knowingly possess a usable quantity of marihuana in an amount of more than fifty (50) pounds but less than two hundred (200) pounds, and ... with the intent to promote or assist the commission of said offense, did aid and assist ERNESTO VARGAS by constructing a specialized compartment to store the marihuana....

The jury found appellant guilty as charged in the indictment.

The standard of review for denial of a motion for instructed verdict is the same as that for challenges to the sufficiency of the evidence. *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990), *cert. denied,* 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). When we review the sufficiency of the evidence, we determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–2789, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App.1991); *Villarreal v. State,* 865 S.W.2d 501, 503 (Tex. App.—Corpus Christi 1993, pet. ref'd). The jury, as the factfinder, is the exclusive judge

of the credibility, weight, and balance of testimonial evidence. *Penegraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981). The jury may accept or reject all or part of any witness's testimony. *Id.*

■ To show knowing or intentional possession, the State must prove beyond a reasonable doubt that the accused exercised care, control, custody, or management over the contraband and that he knew it was contraband. *Martin v. State,* 753 S.W.2d 384, 387 (Tex.Crim.App.1988); *Humason v. State,* 728 S.W.2d 363, 364–65 (Tex.Crim.App. 1987); *Segura v. State,* 850 S.W.2d 681, 683 (Tex.App.—Corpus Christi 1993, no pet. (en banc)). *See* TEX.PENAL CODE ANN. § 1.07(a)(28) (Vernon 1974).

Appellant contends that there was no evidence to establish that he owned or exercised any control over the motor home. He argues that on cross-examination Brooks testified 1) that before he saw appellant inside the motor home with Faulkner, there was nothing to indicate that appellant was connected to the contraband, 2) that there was nothing to indicate that appellant ever possessed any contraband prior to or after his arrest, and 3) that there was nothing to indicate that appellant had care, control, or management of the contraband found in the motor home either before or after the raid on December 21, 1991.

■ The State need not show the accused's possession to be exclusive. *McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex. Crim.App.1985). Evidence which shows that the accused jointly possessed the contraband with others is sufficient. *Oaks v. State,* 642 S.W.2d 174, 176 (Tex.Crim.App.1982). The State must show affirmative links between the accused and the substance to show participation in the offense. *Humason,* 728 S.W.2d at 365–66.[4] Participation in a criminal offense may be inferred from the circumstances. *Beardsley v. State,* 738 S.W.2d 681, 684 (Tex.Crim.App.1987). The State must show more than mere presence near the contraband. *Humason,* 728 S.W.2d at 365.

4. Though the pre-*Geesa* reasonable hypothesis standard is no longer applicable, the requirement of affirmative links persists in possession cases.

We review the sufficiency of the evidence of those links under the pure *Jackson* standard. *Villarreal v. State,* 865 S.W.2d at 503 n. 1.

While presence of an accused at the scene of an offense is not alone sufficient to support a conviction, it is a circumstance tending to prove guilt which, with other facts, may suffice to show that the accused was a participant. *Valdez v. State,* 623 S.W.2d 317, 321 (Tex.Crim.App.1979); *Mares v. State,* 801 S.W.2d 121, 127–28 (Tex.App.—San Antonio 1990, no pet.); *Escobar v. State,* 799 S.W.2d 502 (Tex.App.—Corpus Christi 1990, pet. ref'd). Activities before, during, or after the offense are relevant to determine whether the defendant was acting as a party. *Medellin v. State,* 617 S.W.2d 229, 231 (Tex.Crim. App. [panel op.] 1981). *See Buitureida v. State,* 684 S.W.2d 133, 144 (Tex.App.—Corpus Christi 1984, pet. ref'd).

After a thorough review of the record, we hold that there is sufficient evidence from which a rational trier of fact could find appellant guilty as a principal and as a party to the offense of possession of marihuana. The evidence shows that appellant assisted in constructing a concealed compartment in the RV motor home, that he was in close proximity to the contraband to indicate his awareness of its presence, and that he helped conceal the marihuana in the compartment after it was delivered to the motor home by Ernesto Vargas. A rational jury could reasonably infer from the circumstances that appellant's actions, in cooperation with the other co-defendants, showed that he knew of the marihuana and that he exercised care, control and management of the contraband. *See Alvarez v. State,* 813 S.W.2d 222, 224 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). A rational jury could also find from appellant's actions that appellant had the intent to promote or assist Ernesto Vargas to possess marihuana and that he aided and assisted him by constructing a specialized compartment to store the marihuana.

The trial court did not err by denying appellants' motion for instructed verdict. We overrule appellant's first, second, and third points of error.

We affirm the judgment of the trial court.