**In re Eduardo CHAVEZ.**

**No. 08–03–00277–CR.**

Court of Appeals of Texas, El Paso.

Aug. 12, 2003.

---

Jaime E. Esparza, El Paso, for state.

Ray Velarde, El Paso, for relator.

John P. Mobbs, El Paso, for ad litem.

BARAJAS, C.J., LARSEN, McCLURE, and CHEW, JJ., EN BANC.

## *OPINION ON WRIT OF MANDAMUS*

DAVID WELLINGTON CHEW, Justice

Relators Eduardo Chavez and Cesar De Leon seek mandamus relief directing Respondent, the Honorable Luis Aguilar, judge of the 120th Judicial District Court of El Paso County to recuse himself from their cases, or in the alternative, relief directing Judge Aguilar to refer their respective motions to recuse to the presiding judge in this administrative judicial region for proper adjudication.[1] Relators also request a writ of prohibition to prohibit Judge Aguilar from exercising jurisdiction over their cases. The real parties in interest in each cause are their attorneys Joseph (Sib) Abraham, Jr. and Kathleen Salome Smith. We must deny mandamus relief in each cause.

## FACTUAL AND PROCEDURAL BACKGROUND

Relators' complaints about Judge Aguilar's alleged personal bias arise from events which occurred in April 2002, during which Judge Aguilar was a candidate for judicial office for the 120th Judicial District Court. At that time, Mr. Joseph (Sib) Abraham and Ms. Kathleen Salome Smith, together as the Law Offices of Joseph (Sib) Abraham, Jr., were attorneys representing their client Javier Favela in a criminal matter then pending in the United States District Court in El Paso, Texas. During the course of that representation, Mr. Favela was critically injured in a traffic accident during an inmate transfer movement by the U.S. Marshal Service on April 10, 2002. The marshals immediately contacted the Law Offices of Joseph (Sib) Abraham, Jr. and informed them of the accident and requested that they notify the Favela family. In addition, the U.S. Marshal Service requested that the law office serve as liaison between the Favela family, medical personnel, and the Marshal Service since Mr. Favela was still considered a prisoner in federal custody who could not have physical contact with family members. Ms. Smith went to Thomason Hospital, where she was eventually met by Favela family members.

The next day, April 11, 2002, numerous individuals approached the Favela family at Thomason Hospital while their attorney Ms. Smith was present. These individuals included attorneys attempting to solicit representation of Mr. Favela in any personal injury litigation against those agencies involved in the traffic accident. Judge Aguilar, then a judicial candidate, was among the attorneys present at Thomason Hospital. The Favela family members advised those individuals in the presence of U.S. Marshals, that the law office of Joseph (Sib) Abraham, Jr. would be handling the representation of Javier Favela and his family. Mr. Abraham's law office continued to represent the Favela family interests until April 13, 2002, two days later, when the Favela family informed Mr.

---

1. The two petitions for writs of mandamus or prohibition involve the same respondent and real parties in interest. The petitions were argued together and will be disposed of in two identical opinions.

Abraham and Ms. Smith that they had retained the services of another attorney, Luis Aguilar, now Judge Luis Aguilar. The conduct of Judge Luis Aguilar at the hospital, and days thereafter, is the foundation for the subsequent motions to recuse.

In each case identical recusal motions allege that prior to being hired by the Favelas, Judge Aguilar appeared at Thomason Hospital, supposedly on behalf of the Favela's church community. Relators contended that although Judge Aguilar knew that the Favelas had secured the Law Offices of Joseph (Sib) Abraham, Jr. as their counsel and had seen Ms. Smith at the hospital, his true purpose was to procure legal employment and the Favela's personal injury case. On April 15, 2002, Judge Aguilar formally informed Ms. Smith that he had been retained by all of Mr. Favela's heirs to represent their interests regarding any personal injury claim. On April 16, 2002, Ms. Smith sent a letter complaining about Judge Aguilar's solicitation of business. Ms. Smith stated that Judge Aguilar was certainly aware that she represented Mr. Favela in his federal criminal proceedings and was the individual first contacted by the U.S. Marshal Service. Ms. Smith further stated that she was present at Thomason Hospital with Mr. Favela from Wednesday, April 10, 2002, until the early hours of the following morning, Thursday, April 11, 2002, from approximately 10 a.m. to 9 p.m. on that same date, and again on Friday, April 12, 2002, from approximately 9:30 a.m. to 12:30 p.m. and from 3:15 p.m. to 5 p.m. During this time period, it was Ms. Smith's understanding, based on her communication with the Favela family that she would be handling any personal injury claim. With respect to the solicitation, Ms. Smith wrote,

I have always upheld an impeccable ethical reputation and I did not, given the very grave nature of Mr. Favela's injuries and the family's anguish, believe it appropriate or considerate to require the Favelas to sign a formal contract with me at that time. Their word was sufficient for me. I could not have anticipated that an individual newly elected for a judicial position and who I am certain embodies the utmost respect for legal ethics would appear at the hospital as a representative of the Favela's church community—and enter into a legal discussion with them when it was well-known by you that I represented them.

After receipt of Ms. Smith's letter, Judge Aguilar orally communicated with Mr. Abraham concerning the Favela situation. During their conversation, Judge Aguilar allegedly referred to and described Ms. Smith in a derogatory and unkind manner. Ms. Smith and Judge Aguilar had no further communication or contact until March 2003 at which time Ms. Smith appeared on behalf of Mr. Abraham as counsel for their client David Estrada in the case styled *State v. Estrada* before Judge Aguilar in the 120th Judicial District Court.

Relators' recusal motions also detail Judge Aguilar's actions as presiding judge in *State v. Estrada* during March and April 2003, prior to his recusal, which Relators assert evidenced his deep-rooted bias against the Relators. In the *Estrada* case, Judge Aguilar scheduled that case for trial on a date which Ms. Smith had previously and formally notified the court would conflict with a specially scheduled jury trial in the *State of Texas v. Trent Eigner* in the 41st Impact Court of El Paso County. At the April 2, 2003 hearing on the motion to continue filed in *Estrada* based on this scheduling conflict, counsel Ray Velarde appeared before Respondent on behalf of the law office of Joseph (Sib) Abraham, Jr. to urge Mr. Abraham's mo-

tion for continuance of that hearing filed April 1, 2003. Respondent denied the motion to continue.

In March 2003, Mr. Abraham with counsel Ray Velarde were scheduled for a status conference in an unrelated civil forfeiture case before Judge Aguilar. When associate Ms. Smith failed to appear precisely at 9:30 a.m., Judge Aguilar *sua sponte* granted a post answer default judgment in favor of the State of Texas. Ms. Smith was admittedly tardy to the conference because she was still appearing before the Hon. David Briones, a federal district judge for the Western District of Texas, El Paso Division in three cases. Prior to the status conference, the State and claimants had been involved in settlement negotiations, which they continued after the judge's action. However, upon information and belief, counsel understood that Judge Aguilar would not accept their settlement agreement or an agreed judgment. On April 4, 2003, Mr. Abraham, Ms. Smith, and Mr. Velarde filed a motion for new trial in the civil case, and attached to their April 11 amended motion a letter from Judge Briones to Judge Aguilar, confirming that Ms. Smith was in his court for mandatory docket call, which lasted longer than he had anticipated. Though the State did not oppose the motion for new trial, Judge Aguilar denied the motion at the April 25 hearing on the matter.

On May 2, 2003, Mr. Abraham and Ms. Smith filed a motion to recuse based on the allegations described above on behalf of their client in *State of Texas v. David Estrada.* This motion is identical to the recusal motions the attorneys would later file in Relator Chavez's case on May 28, 2003 and Relator De Leon's case on June 5, 2003. In the *Estrada* case, Judge Aguilar properly referred the motion to the administrative judge of the Sixth Administrative Judicial Region. The Honorable Kathleen Cardone conducted a hearing on the *Estrada* recusal motion on May 30, 2003. At the *Estrada* hearing, Judge Aguilar was represented by attorney ad litem Stuart Leeds. On June 2, 2003, Judge Cardone granted the motion to recuse in *State v. Estrada,* finding that grounds existed to justify recusal of Judge Aguilar based on his alleged bias against Mr. Abraham and Ms. Smith. Judge Cardone ordered Judge Aguilar to recuse himself from further proceedings in the *Estrada* case. On June 3, 2003, Judge Aguilar filed a motion for reconsideration in the *Estrada* case, to which Mr. Abraham and Ms. Smith as Estrada's counsel filed a response. On June 5, 2003, Judge Aguilar filed a reply to the response, alleging for the first time that the motion to recuse in *Estrada* did not state adequate grounds for recusal and was not "prima facie adequated [sic]."

On the same date, in Relator Chavez's case, Stuart Leeds, acting as "Attorney ad Litem for Judge Aguilar," filed a "Motion to Strike/Quash Motion to Recuse." In the motion, Judge Aguilar through his ad litem counsel requested that he, Judge Aguilar, strike the motion to recuse filed on May 28, 2003, because it failed to state with "particularity" the grounds for recusal, was based on "unidentified hearsay," was not "facially sufficient and prima facie adequated [sic]," and "[did] not even allege proper grounds for recusal." On June 6, 2003, Judge Aguilar granted his own motion to quash Relator Chavez's recusal motion, finding that the recusal motion was facially insufficient, not "prima facie adequated [sic]," and had failed to allege proper grounds for recusal. In ruling on his own motion, Judge Aguilar stated, "a proper Motion to Recuse is not before the trial judge and this case will not be referred to the presiding judge of the administrative judicial district to have another judge hear the motion." On the same date, Judge

Aguilar also issued an order denying Relator De Leon's recusal motion based on the same reasoning.

## DISCUSSION

### Disqualification and Recusal

A trial judge may be removed from presiding over a particular case because: (1) he/she is disqualified under Article V, section 11 of the Texas Constitution; (2) he/she is disqualified under Section 74.053 of the Government Code; or (3) he/she is subject to recusal under civil procedure Rules 18a and 18b. *In re Union Pacific Resources Co.*, 969 S.W.2d 427, 428 (Tex.1998)(orig.proceeding). The grounds and procedures for each type of removal are fundamentally different. *In re Union Pacific Resources Co.*, 969 S.W.2d at 428.

■ With respect to disqualification, Article V, section 11 of the Texas Constitution provides in pertinent part:

> No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with the judge, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when the judge shall have been counsel in the case.

TEX. CONST. art. V, § 11 (Vernon Supp. 2003). Moreover, in a criminal case, disqualification of a judge can occur when: (1) the judge is the injured party; (2) the judge has been counsel for the accused or the State; or (3) the judge is related to the accused or the injured party by consanguinity or affinity within the third degree. *See* TEX.CODE CRIM.PROC.ANN. art. 30.01 (Vernon Supp.2003). These provisions have been held mandatory. *Gamez v.*

*State*, 737 S.W.2d 315, 318 (Tex.Crim.App. 1987). In addition to constitutional and statutory prohibitions, the Court of Criminal Appeals has recognized "judicial bias" as a ground for legal disqualification only in those cases in which the bias is shown to be of such a nature and to such an extent as to deny a defendant due process of law. *McClenan v. State*, 661 S.W.2d 108, 109 (Tex.Crim.App.1983). Disqualification of a judge cannot be waived, even by consent of the parties, and the issue may be raised at any time. *Gamez*, 737 S.W.2d at 318.

■ Recusal, on the other hand, includes those instances in which a judge voluntarily steps down and those instances in which a judge is required to step down on a motion of a party for reasons other than those enumerated as grounds for disqualification in the Texas constitution. *Degarmo v. State*, 922 S.W.2d 256, 267 (Tex.App.-Houston [14th Dist.] 1996, writ ref'd). Rule 18a of the Texas Rules of Civil Procedure governs recusal of judges. *See* TEX.R.CIV.P. 18a; *Arnold v. State*, 853 S.W.2d 543, 544 (Tex.Crim.App.1993)(en banc)(Rule 18a applies in criminal cases). In order to recuse a judge, any party may file a motion stating why the judge before whom the case is pending should not sit in the case. TEX.R.CIV.P. 18a(a). The motion must be filed at least ten days before the date set for trial or other hearing, must be verified, and must state with particularity the grounds for recusal.[2] *Id.* The motion shall be made on personal knowledge and shall set forth such facts as would be admissible in evidence provided that such facts may be stated upon information and belief if the grounds of such belief are specifically stated. *Id.* Prior to any fur-

---

**2.** Rule 18b(2) provides the various grounds for recusal, which include requiring a judge to recuse himself in any proceeding in which (a) his impartiality might reasonably be questioned, and (b) he has a personal bias or

prejudice concerning the subject matter or a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. TEX.R.CIV.P. 18b(2)(a), (b).

ther proceedings in the case, the judge shall either recuse himself/herself or request the presiding judge of the administrative judicial district to assign a judge to hear the motion. TEX.R.CIV.P. 18a(c). If that motion is denied, the standard of review is abuse of discretion on appeal from the final judgment. TEX.R.CIV.P. 18a(f); *In re Union Pacific Resources Co.*, 969 S.W.2d at 428.

In criminal cases, the law has developed that a criminal trial judge may make an initial determination as to whether the recusal motion conforms with Rule 18a(a).[3] *See Arnold,* 853 S.W.2d at 544–45 (finding that appellants' recusal motions failed to comply with the ten-day notice provision of Rule 18a); *Moorhead v. State,* 972 S.W.2d 93, 95 (Tex.App.-Texarkana 1998, no pet.) (no error for failure to refer where recusal motion was unverified); *Sanchez v. State,* 926 S.W.2d 391, 396 (Tex. App.-El Paso 1996, writ ref'd)(a trial judge may properly make the initial determination as to whether a recusal motion is in compliance with the rule); *Bruno v. State,* 916 S.W.2d 4, 8 (Tex.App.-Houston [1st Dist.] 1995, writ ref'd)(trial judge inaction on defective motion was not error); *Vargas v. State,* 883 S.W.2d 256, 259 (Tex. App.-Corpus Christi 1994, writ ref'd)(mandatory referral provisions not triggered when recusal motion is procedurally defective). If the motion is procedurally sound, the criminal trial judge, as in civil cases, is required to either self recuse or to refer

the recusal motion to the presiding judge of the administrative region for assignment to another judge for hearing and disposition. *Bruno,* 916 S.W.2d at 8.

### Mandamus Relief

This Court has authority to grant mandamus relief if the relator can demonstrate that (1) he has no other adequate legal remedy; and (2) under the relevant facts and law, the act sought to be compelled is purely ministerial. *State ex rel. Hill v. Court of Appeals for the Fifth Dist.,* 34 S.W.3d 924, 927 (Tex.Crim.App.2001) (orig. proceeding), *citing Dickens v. Court of Appeals for Second Supreme Judicial Dist. of Texas,* 727 S.W.2d 542, 550 (Tex. Crim.App.1987) (orig. proceeding). An act is "ministerial" if the relator has a clear right to the relief sought, that is, the relief sought must be "clear and indisputable" such that its merits are "beyond dispute" with "nothing left to the exercise of discretion or judgment." *State ex rel. Rosenthal v. Poe,* 98 S.W.3d 194, 198 (Tex.Crim.App. 2003) (orig. proceeding). If an adequate remedy at law is available in the form of an appeal, it is an abuse of discretion for this Court to grant mandamus relief. *Alvarez v. Eighth Court of Appeals of Tex.,* 977 S.W.2d 590, 592 (Tex.Crim.App.1998).

Judge Aguilar has filed a response to Relators' petitions for writ of mandamus, in which *inter alia,* he argues that under *Woodard v. The Eighth Court of Appeals,*

---

3. Case law in civil cases is starkly different. When a recusal motion is filed, the trial judge has but two options: recusal or referral of the case to the presiding judge for disposition. *See Johnson v. Pumjani,* 56 S.W.3d 670, 672 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *In re Presley,* No. 05–00–00793–CV, 2000 WL 688239 (Tex.App.-Dallas May 23, 2000, orig. proceeding)(not designated for publication) 2000 WL 688239, at *1 (Upon notice of the filing of a motion to recuse, a trial judge must promptly either voluntarily recuse himself or refer the motion to the presiding judge of the administrative judicial district for action). This is so regardless of the timeliness of the motion or the sufficiency of the grounds for recusal. *Jamilah v. Bass,* 862 S.W.2d 201, 203 (Tex.App.-Houston [14th Dist.] 1993, orig. proceeding). Though the motion may ultimately fail, that decision is made by a different judge, thereby avoiding even the appearance of impropriety. *Johnson,* 56 S.W.3d at 672.

991 S.W.2d 795, 796 (Tex.Crim.App.1998), Relators have an adequate remedy at law and therefore, are not entitled to mandamus relief. In *Woodard*, the Court of Criminal Appeals held that this Court had abused its discretion in granting mandamus relief against Judge Jerry Woodard by our opinion *In re Castillo*, No. 08–97–00479–CR, 1998 WL 197656, opinion vacated and withdrawn on August 21, 1998 (Tex. App.-El Paso April 23, 1998). *Woodard*, 991 S.W.2d at 796–97. In the underlying case, Judge Woodard had overruled relator's fourth amended motion to recuse without a hearing and without referral to the presiding judge of the administrative judicial region. *Castillo*, No. 08–97–00479–CR, 1998 WL 197656, at \* 2; *see Woodard*, 991 S.W.2d at 796. In its opinion, the *Woodard* Court states, "[a] court of appeals should not grant mandamus relief to the complaining party on a recusal motion under Tex.R.Civ.P. 18a because the party has an adequate remedy at law by way of an appeal from the final judgment." *Woodard*, 991 S.W.2d at 796, *citing In re Union Pacific Resources Co.*, 969 S.W.2d 427 (Tex.1998).

By its broad spectrum, the *Woodard* decision is a singular authority to Texas courts that in all criminal cases where a party has filed a procedurally sound motion to recuse, but the trial judge refuses to comply with Rule 18a, courts of appeal have no mandamus authority to order that trial judge to take action, even though such action is mandatory under Rule 18a(c). In making this determination, the

Court relied on *In re Union Pacific Resources Co.*, in which the Texas Supreme Court held that a court of appeals abused its discretion by issuing a writ of mandamus when the complaining party had an adequate remedy by appeal upon denial of the recusal motion. *See In re Union Pacific Resources Co.*, 969 S.W.2d at 429. In *In re Union Pacific Resources Co.*, the complaining party sought mandamus relief from a presiding judge's denial of the motion to recuse following a rehearing. *Id.* at 428. Under the facts of that case, the trial judge had properly referred the party's motion to the presiding judge for the administrative judicial district for disposition. *Id.* at 427–28. In its opinion, the Supreme Court noted that its Rules of Civil Procedure, citing to Rule 18a(f), expressly provide for appellate review from a final judgment after denial of a recusal motion. *Id.* at 428.

Unlike the complaining party in *In re Union Pacific Resources Co.*, the Relators in the present cases, like the complaining party in *Woodard*, did not have their recusal motions properly "denied" after a hearing before an assigned judge. The language of Rule 18a(f) suggests to this Court that the rule addresses those instances where a recusal motion was properly denied, but does not expressly provide an adequate remedy where a criminal trial judge takes no action or inappropriate action on a recusal motion that is in procedural compliance or denies that motion essentially on its merits without referral or even a hearing.[4] The San Antonio Court

---

4. In his concurring opinion in *In re Union Pacific Resources Co.*, Justice Hecht states that he does not read the Court's opinion in that case to preclude mandamus relief for extraordinary cases concerning a denial of a motion to recuse. Justice Hecht remarked that "[t]he rule that appeal affords an adequate remedy for an erroneous denial of a motion to recuse cannot be without excep-

tions. In other contexts we have noted that mandamus may be appropriate when a judge has flagrantly refused to follow procedural rules ... or when the ruling is almost certain to require a reversal of the final judgment on appeal...." *In re Union Pacific Resources Co.*, 969 S.W.2d at 429 (Hecht, J., concurring).

of Appeals discussed this distinction in its opinion in *In re Flores*, 53 S.W.3d 428 (Tex.App.-San Antonio 2001, orig. proceeding). In its review of *In re Union Pacific Resources Co.*, the Court noted that *In re Union Pacific Resources Co.* involved a denial of a motion to recuse, rather than a complaint for failure to comply with Rule 18a(c). *In re Flores*, 53 S.W.3d at 430. Based in part on this reasoning, the Court determined that it had mandamus authority. *See id.* at 430; *see also Viggiano v. The Hon. Don R. Emerson*, No. 07–95–0222–CV, 1997 WL 20871 (Tex.App.-Amarillo Jan. 21, 1997, orig. proceeding)(not designated for publication) 1997 WL 20871 (finding no remedy by appeal under circumstances where trial judge failed to either refer or recuse, such that the motion could neither be granted nor denied). The differences between the facts of *In re Union Pacific Resources Co.*, a case involving a clear denial of a motion to recuse by the assigned judge, compared to the situation in which Relators find themselves, suggest to this Court that the *Woodard* decision interpreted *In re Union Pacific Resources Co.* much more broadly than was warranted in that case and creates a bewildering effect. Without at least a ruling by some other judge, the trial court's inaction or improper denial of the recusal motion inexcusably undermines the purpose of Rule 18a(c), to provide a neutral, disinterested proceeding for adjudication of the alleged grounds for recusal and the opportunity to establish a complete record for appeal if that motion is subsequently denied.

■ Moreover, we fail to see how Relators Chavez and De Leon will have an *adequate* remedy at law in their cases under the circumstances. As Justice Overstreet noted in his dissent in *Woodard*, "[r]equiring a defendant to go to trial without having his recusal motion ruled upon in compliance with Rule 18a is pat-

ently unfair, as well as inefficient and wasteful of judicial resources.... Sometimes a remedy at law that exists may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate." *Woodard*, 991 S.W.2d at 797 (Overstreet, J., dissenting). We add that such circumstances will also needlessly burden our state prosecutorial resources and will cause defendants and crime victims to endure yet another trip through the criminal justice system, which all parties could have avoided through the availability of appropriate mandamus relief. And then there is a fundamental public interest of confidence in the administration of justice so that in the words of Lord Hewart: "justice should not only be done, but should manifestly and undoubtedly be seen to be done." *R. v. Sussex Justices, Ex parte McCarthy* (1924) 1 KB 256, 259, All ER Rep 233, 234.

In this case, Judge Cardone conducted a hearing on an identical recusal motion and found that grounds existed to justify Judge Aguilar's recusal based on his alleged bias against Mr. Abraham and Ms. Smith—the same exact grounds alleged in Relators' motions to recuse. The *Estrada* motion was filed contemporaneously to those in Relators' causes. In her *Estrada* ruling, Judge Cardone implicitly found the same bias alleged by Relators. Given the proximity of events, it is doubtful that the alleged bias against the real parties in interest had faded. At oral argument, the parties in effect conceded that any alleged bias would have persisted in such a short time frame. If Relators had been given a hearing on their recusal motions as required under Rule 18a, they would have had an opportunity to submit the *Estrada* ruling as evidentiary grounds for collateral estoppel. Through his actions, Judge Aguilar has effectively limited Relators' ability to obtain a fair hearing and their ability to effectively utilize the appellate

process based on a complete evidentiary record on the matter.

In the present cases, Judge Aguilar clearly violated a ministerial duty by failing to either recuse himself or refer the procedurally sound recusal motions to the presiding judge for disposition, acting instead in direct contravention of Rule 18a(c). Despite our reservations as to the adequacy of a remedy of appeal under the circumstances, we are bound to follow the precedent set forth in *Woodard* and find that we have no mandamus authority to address a trial judge's abusive noncompliance with Rule 18a upon the filing of non-defective motions to recuse.

Therefore, we deny mandamus relief in each cause.

BARAJAS, C.J., concurring.

LARSEN, J., dissenting.

RICHARD BARAJAS, Chief Justice, concurring.

I concur in the result reached by the majority in that this Court is duty-bound to follow established caselaw, as formulated by the Texas Court of Criminal Appeals. I would join in reluctantly denying mandamus relief for that reason alone.

I, nonetheless, must take the extraordinary step of echoing Justice Larsen's position that the Texas Court of Criminal Appeals should revisit *Woodard v. The Eighth Court of Appeals,* 991 S.W.2d 795 (Tex.Crim.App.1998). I would strongly concur in Justice Larsen's statement that forcing a criminal defendant to trial before appellate relief can be obtained on a trial court's failure to perform an otherwise ministerial duty is unfair, totally inefficient, and a waste of judicial resources, especially in light of the draconian budget cuts that the Texas judicial system was forced to undergo. Moreover, forcing a trial under such circumstances, when a matter can easily be resolved through

mandamus, places an undue burden on the prosecution to reassemble witnesses for a re-trial years later, an undue burden on local government who bear the cost of assembling juries and associated costs of trial, and more important, on the often neglected victim of crime who may be needlessly re-victimized all because a trial judge refused to perform a ministerial act. I would respectfully request that the Texas Court of Criminal Appeals revisit *Woodard.*

LARSEN, Justice, filed a dissenting opinion.

SUSAN LARSEN, Justice, dissenting.

I respectfully dissent. Although I realize the majority feels constrained to follow the Court of Criminal Appeals opinion in *Woodard v. The Eighth Court of Appeals,* 991 S.W.2d 795 (Tex.Crim.App.1998), it is my view that the facts in these cases are distinguishable. Moreover, I am compelled to voice my conclusion that *Woodard* is simply wrong, and I write to urge that the Court of Criminal Appeals revisit it. I write briefly to explain my thinking.

First, I believe the facts here beg for immediate remedy. Three identical recusal motions were filed by Mr. Abraham and Ms. Smith. Judge Cardone, assigned to hear the first motion, has already found that grounds exist to justify recusal. She granted the motion on June 2, 2003. The respondent judge then obtained an attorney ad litem. The ad litem immediately filed, on the challenged judge's behalf, motions to strike or quash the two remaining recusal motions. The respondent judge then granted *his own motion* in the face of the existing recusal order based on the same facts. His grounds for doing so were not objectively verifiable, but rather that the motions were "facially insufficient and not prima facie adequated [sic]."

Another remarkable fact in these cases is the appointment of two attorneys ad

litem to represent the respondent judge (one attorney at the trial level, a second appellate specialist for appearance before this Court; both appointed by the local presiding judge and presumably to be paid from the county coffers). This Court has found no authority for such appointments; to the contrary, the case law indicates that for a judge to advocate a position in the recusal proceeding at all may itself be grounds for disqualification. *Blanchard v. Krueger,* 916 S.W.2d 15, 19 (Tex.App.-Houston [1st Dist.] 1995, original proceeding). In my opinion, the respondent judge has now injected himself in the proceedings to such an extent that he cannot maintain the appearance of neutrality in these cases. I believe these facts are more extreme than those presented in *Woodard* and therefore distinguishable. I would conditionally grant mandamus.

Moreover, for the reasons outlined by Justice Overstreet in his dissent to that case, I think *Woodard* was wrongly decided.[1] Forcing a criminal defendant to trial before he can receive appellate relief on the trial court's failure to perform a ministerial duty is unfair, inefficient, and wasteful of judicial resources. *See Woodard,* 991 S.W.2d at 797 (Overstreet, J. dissenting). An appeal is not an adequate remedy when the trial has been conducted by a trial judge tainted by motions to recuse which he has denied, particularly where an identical motion has been granted by an impartial assigned judge, and where the trial judge has obtained counsel to resist the recusal motions.

For these reasons, I would conditionally grant mandamus.

---

1. Curiously, *Woodard* is a per curiam opinion with a dissent.