**Charles David WHITEHEAD,**
**Appellant,**

v.

**STATE of Texas, Appellee.**

No. 11–05–00240–CR.

Court of Appeals of Texas,
Eastland.

March 15, 2007.

Rick Dunbar, Abilene, for appellant.

Russell D. Thomason, Dist. Atty., Brenda Seale Gray, Sarah M. Adams, Dist. Atty's Office, Eastland, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

JIM R. WRIGHT, Chief Justice.

The jury convicted Charles David Whitehead of retaliation and assessed his punishment at fifteen years confinement and a fine of $10,000. We affirm.

On April 24, 2000, appellant pleaded guilty to the offense of indecency with a child. The trial court sentenced him to four years confinement but suspended the imposition of that sentence and placed appellant on community supervision for four years. The trial court later found that appellant violated the terms of his community supervision and, on August 14, 2003, revoked that community supervision and

sentenced appellant to four years confinement.

On August 15, 2003, while in the Eastland County Jail, appellant wrote a letter to his girlfriend. The letter was discovered by a jailer as she scanned outgoing mail at the jail. In the letter, appellant wrote, among other things: "I live to get out and kill that Judge, Mrs. Keith, Tucker, and their families and pets! [A]nd rape their woman! [And] children[,] in front of them. [T]hat will teach them!" The State indicted appellant for retaliation against Joe Tucker. "That judge" refers to Judge Herod, Judge of the 91st District Court. Judge Herod was the judge who revoked appellant's community supervision. "Tucker" was Joe Tucker, a probation officer who testified for the State at the revocation hearing.

▆▆▆ In his first issue on appeal, appellant claims that the trial court did not have jurisdiction over the case because the trial judge was disqualified. Although this complaint was not made in the trial court, the matter of disqualification of a judge cannot be waived even by consent of the parties, and the issue may be raised at any time. *Gamez v. State*, 737 S.W.2d 315, 318 (Tex.Crim.App.1987). Appellant does not complain that the trial judge should have recused himself, only that Judge Herod was disqualified by statute. *See In re Chavez*, 130 S.W.3d 107, 112–13 (Tex.App.-El Paso 2003, no pet.).

▆▆▆ The constitutional and statutory grounds for judicial disqualification are mandatory and exclusive. *See* TEX. CONST. art. V, § 11; TEX.CODE CRIM. PROC. ANN. art. 30.01 (Vernon 2006); *Gamez v. State*, 737 S.W.2d at 318; *Ex parte Largent*, 144 Tex.Crim. 592, 162 S.W.2d 419, 426 (1942); *Chambers v. State*, 167 S.W.3d 534, 535 (Tex.App.-Fort Worth 2005, pet. ref'd). Appellant raises only statutory grounds.

Article 30.01 contains the following provision:

No judge or justice of the peace shall sit in any case where he may be the party injured, or where he has been of counsel for the State or the accused, or where the accused or the party injured may be connected with him by consanguinity or affinity within the third degree, as determined under [TEX. GOV'T CODE ANN. ch. 573 (Vernon 2004)].

Appellant contends that Judge Herod was "the party injured" and is therefore disqualified from sitting as a judge in this case. The State contends that Judge Herod was not the party injured in this case because appellant was charged with retaliation against Joe Tucker, not Judge Herod. We agree with the State and hold that Judge Herod was not the party injured in this case and was not disqualified. We do not know whether Judge Herod would have recused himself or whether an assigned judge would have recused him after a hearing on a recusal motion, but appellant never sought recusal.

We have found no case directly on point. However, holdings regarding similar language in other statutes are instructive. It is necessary for us to determine the meanings of "party injured" and "in this case." In *Velasquez*, the Court of Criminal Appeals was dealing with one of the statutory exceptions to spousal disqualification contained in former TEX.CODE CRIM. PROC. art. 38.11 (1973). *See now* TEX.R. EVID. 504. There, the State called the defendant's wife, Diamatina, as a witness. The evidence showed that Diamatina was permitted to testify that appellant came up to her and a person named Frometa while they were sitting in Frometa's car. She further testified that appellant shot Frometa in the head "around six times." He also shot Diamatina in the hip. Former Article 38.11 contained an exception to the hus-

band/wife privilege that permitted a spouse to voluntarily testify against the other spouse "in any case for an offense involving any grade of assault or violence committed by one against the other." *Young v. State*, 603 S.W.2d 851 (Tex.Crim. App.1980). The court held that, because the defendant's wife was not the injured party in the case being tried, even though she had been shot by the defendant in the same episode, the exemption did not apply and that she could not testify over objection. *Velasquez v. State*, 727 S.W.2d 580, 581 (Tex.Crim.App.1987).

In *Young*, the same problem arose. The witness was the defendant's wife. The defendant drove his vehicle into another vehicle occupied by his wife, her brother Tommy Gould, and another man. It was the State's position that, since the defendant's wife had been injured when the defendant drove his vehicle into the other vehicle, she could testify in his trial. In its original opinion, the Court of Criminal Appeals held that, even though the defendant's wife was injured and was taken to the hospital, the indictment did not allege that appellant's wife was injured but, rather, alleged that her brother was injured. The exception to the spousal privilege did not apply because the wife "was not the injured party in the case being tried." *Young v. State*, 603 S.W.2d 851, 852 (Tex. Crim.App.1980). On rehearing, Judge Clinton wrote for the court: "[I]t is a case for an offense allegedly committed by [the defendant] against Gould.... '[T]he wife was not the injured party in the case being tried.' " *Young*, 603 S.W.2d at 853.

Although they involve a different statute, these decisions inform our decision in the case under consideration. They both involve a determination of when a person is an injured party in the case then being tried. Judge Herod was not disqualified because he was not an injured party *in*

*this case*. The injured party in this case was Joe Tucker.

Appellant cites *Ex parte Vivier*, 699 S.W.2d 862 (Tex.Crim.App.1985), for the proposition that there is a statutory concern that a judge in Judge Herod's position would be perceived by the public as a "biased arbiter of a case arising out of the writing of this letter." *Vivier* is distinguishable. The court in *Vivier* dealt with a situation in which the trial judge was related to the defendant within the third degree of consanguinity. However, the trial judge did not know of the relationship and was not made aware of it until the trial was over. The court held that that did not matter. The *Vivier* court acknowledged that the argument could be made that, if the trial court did not have knowledge of the relationship, there would be no cause for concern regarding bias. However, the court enforced the statute as plainly written and held that the judgment was void. A claim of judicial bias is not a ground for legal disqualification unless the bias is shown to be such that there is a denial of due process. *In re Chavez*, 130 S.W.3d at 112. No such claim is made in this case.

The trial court was not disqualified from hearing this case. Appellant's first issue on appeal is overruled.

■ In his second issue, appellant complains of the admission of testimony regarding a prior conviction. At trial, appellant called his sister, Geneva McAfee, to testify. Appellant's attorney asked McAfee whether she believed appellant was "serious" when he made the threat against Tucker. McAfee responded, "No." McAfee was asked whether appellant was capable of carrying out such a threat, and she again responded, "No." McAfee further stated that appellant was "not that kind of person." McAfee testified that appellant "has a good heart and he would do any-

thing for anybody.... [H]e gets in trouble sometimes for being too nice to people." The trial court allowed the State to question McAfee about appellant's previous conviction for indecency with a child.

■■■ We review decisions to admit or exclude evidence under an abuse-of-discretion standard. *Torres v. State,* 71 S.W.3d 758, 760 (Tex.Crim.App.2002). We will not reverse a ruling that lies within "the zone of reasonable disagreement." *Id.* A witness who testifies to another's good character may be cross-examined to test the witness's awareness of relevant specific instances of conduct. Tex.R. Evid. 405(a); *Wilson v. State,* 71 S.W.3d 346, 350 (Tex. Crim.App.2002). When a witness presents a picture that the defendant is not the type of person to commit the charged offense, the prosecution may impeach that witness's testimony by cross-examining the witness concerning similar extraneous offenses. *Wheeler v. State,* 67 S.W.3d 879, 885 (Tex.Crim.App.2002). McAfee's testimony that appellant was not capable of committing the offense because he was "not that kind of a person" opened the door for the State to question her about appellant's previous conduct. The trial court did not abuse its discretion in allowing the testimony of appellant's previous conviction. Appellant's second issue on appeal is overruled.

■■■ In his third issue, appellant complains that the evidence is legally and factually insufficient to support his conviction. In order to determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State,* 17 S.W.3d 664 (Tex.Crim. App.2000). To determine if the evidence is

factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State,* 204 S.W.3d 404, 414 (Tex. Crim.App.2006) (overruling in part *Zuniga v. State,* 144 S.W.3d 477 (Tex.Crim.App. 2004)); *Johnson v. State,* 23 S.W.3d 1, 10–11 (Tex.Crim.App.2000); *Cain v. State,* 958 S.W.2d 404, 407–08 (Tex.Crim.App.1997); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson,* 204 S.W.3d at 414–15; *Johnson,* 23 S.W.3d at 10–11.

A person commits the offense of retaliation if he "intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service or status of another as a public servant, witness, prospective witness, or informant." Tex. Pen.Code Ann. § 36.06(a)(1)(A) (Vernon Supp.2006). The indictment alleged appellant threatened to "kill Joe Tucker in retaliation for and on account of the status of Joe Tucker as a witness." Joe Tucker's testimony at appellant's revocation hearing was "damaging" to appellant. After the hearing, appellant wrote a letter expressing his desire to kill Joe Tucker. We find the evidence legally and factually sufficient to support appellant's conviction for retaliation. Appellant's third issue on appeal is overruled.

■■■ In his fourth issue on appeal, appellant argues that he received ineffective assistance of counsel. In order to determine whether appellant's trial counsel rendered ineffective assistance at trial, we must first determine whether appellant has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that

the result would have been different but for counsel's errors. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 988 S.W.2d 770 (Tex.Crim.App.1999).

Appellant argues that his trial counsel was ineffective in failing to object during the State's closing argument at punishment. The State asked the jury to assess the maximum sentence for appellant and stated that appellant was "dangerous" and that he "preys on kids." During closing argument at punishment, appellant's trial counsel argued that the State was seeking to punish appellant again for the indecency-with-a-child conviction. Trial counsel urged the jurors to punish appellant only for the retaliation conviction.

■■■ The analysis for ineffective assistance of counsel is undertaken in light of the "totality of the representation" rather than by examining isolated acts or omissions of trial counsel. *Scheanette v. State,* 144 S.W.3d 503, 509 (Tex.Crim.App.2004); *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex.Crim.App.1986). The fact that another attorney may have pursued a different tactic at trial is insufficient to prove a claim of ineffective assistance. *Scheanette,* 144 S.W.3d at 509. Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional. *Scheanette,* 144 S.W.3d at 510. From the information available to us, we can only speculate as to why counsel acted or failed to act as he did. *Id.* Without more, we must presume that counsel acted pursuant to a reasonable trial strategy. *Id.* Appellant's fourth issue on appeal is overruled.

The judgment of the trial court is affirmed.