In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00161-CR


______________________________




SARONNA MICHELLE LITTLE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 21381




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Saronna Michelle Little appeals from her conviction by a jury for aggravated sexual assault
of a child. The jury assessed her punishment at fifty-five years' imprisonment. Little was tried
together with a codefendant, Louie Matthew Hankey, (1) who is also before this Court in cause number
06-06-00172-CR. (2) She argues on appeal that improper evidence was admitted over objection at the
punishment phase of trial and that the trial court erred by refusing to allow her to re-invoke her right
to remain silent after she had begun to testify during the sentencing hearing.

 The sufficiency of the evidence is not at issue in this appeal, but in order to provide a context,
we will briefly summarize the testimony. Little and her boyfriend, Hankey, were both charged in
connection with Hankey's sexual act with a thirteen-year-old girl, R.A. There was testimony that
R.A., who was babysitting Little's four children, was taken into a bedroom, and that Little told
Hankey that, if he loved her, he would have sex with R.A.--and that, while Little held R.A. down
on the bed, Hankey had sexual intercourse with R.A.

 Little first contends the trial court erred in allowing the State to ask questions about an
alleged extraneous offense during the punishment phase of the trial because the State had not proved
the extraneous offense beyond a reasonable doubt, as required by statute. See Tex. Code Crim.
Proc. Ann. art. 37.07, § 3(a)(1) (Vernon 2006). 

Extraneous Offense--"Have You Heard" Questions 

 At the punishment hearing, the codefendant, Hankey, called his aunt Frances Clark as a
witness. She testified Hankey was a slow learner, was not a troublemaker, was a very Christian
person, and had a "good heart." During cross-examination, the prosecutor asked Clark if she had
heard that Hankey and Little had sex with L.M. (a member of Hankey's family) when L.M. was
seventeen, with Little holding her down. (3) Counsel for Little objected as going into inadmissible
testimony about an extraneous bad act. The court overruled the objection. Clark answered, "I've
heard that, yes. But it's just heard." 

 Hankey also called his father, Louie Hankey, as a witness. Louie testified that Hankey would
not be a danger to others when released from confinement and could follow any rules. Louie also
said Little would not pose a danger to the community if she were placed on community supervision. 
The State asked Louie if he had heard that Hankey and Little forced L.M. to have sex back in 2002.
Counsel for Hankey objected based on hearsay, and the court overruled the objection. Counsel for
Little then expanded the objection--complaining that the testimony was extraneous, had no proper
foundation, and needed to be proved beyond a reasonable doubt. A discussion ensued, in which a
number of other legal theories were propounded, including speculation, undue prejudice, and a
suggestion that the defense had opened the door to the testimony. The court ultimately stated that
it would limit the use of the comment to the purpose of impeachment only. However, when the
question was finally answered by Louie, his response to the "have you heard" question was: "No,
sir, I sure haven't. No."

 Clark and Louie had testified extensively as character witnesses on behalf of Little's
codefendant, Hankey. Their testimony about Little was minimal.

 The question before us is whether questioning these two witnesses whether they had heard
about prior bad acts was admissible. Little argues the State did not meet its burden of proving the
extraneous offense beyond a reasonable doubt. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1); 
Huizar v. State, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). However, the State argues that the
evidence was not presented to prove that either defendant committed an extraneous offense, but to
test the qualifications of those two witnesses to testify as character witnesses for Hankey. 

 This issue has been directly addressed by the Texas Court of Criminal Appeals in Wilson v.
State, 71 S.W.3d 346, 349-50 (Tex. Crim. App. 2002), where the court explicitly held that a witness
who testifies about a defendant's good character may then be cross-examined to test the witness'
awareness of relevant specific instances of conduct. The court held that because a witness testified
about his opinion of the defendant--as in this case--the State was then entitled to ask questions
about specific criminal acts. (4)
 

 A witness who testifies to another's good character may be cross-examined to test the witness'
awareness of relevant specific instances of conduct. Tex. R. Evid. 405(a); Wilson, 71 S.W.3d at
350. When a witness presents a picture that the defendant is not the type of person to commit the
charged offense, the prosecution may impeach that witness' testimony by cross-examining the
witness concerning similar extraneous offenses. Wheeler v. State, 67 S.W.3d 879, 885 (Tex. Crim.
App. 2002); Whitehead v. State, No. 11-05-00240-CR, 2007 WL 765426, at *3 (Tex.
App.--Eastland Mar. 15, 2007, no pet.).

 The questions could properly be asked of either witness in connection with Little's
codefendant, about whose character each witness had given a positive opinion--and who was also
involved in the "bad act." However, Clark provided no evidence of Little's character, and Louie's 
testimony was very minimal on that subject. 

 Thus, the evidence was admissible--but on request, the court would have been required to
limit the jury's consideration of the evidence to that purpose. See Tex. R. Evid. 105(a). When
evidence is admissible for one purpose only, but not for another purpose, "the court, upon request,
shall restrict the evidence to its proper scope and instruct the jury accordingly." Id. A party
opposing the introduction of evidence that is admissible only for one purpose has the burden of
objecting and requesting a limiting instruction when the evidence is proffered. Evans v. State, 500
S.W.2d 846, 850 (Tex. Crim. App. 1973); Arana v. State, 1 S.W.3d 824 (Tex. App.--Houston [14th
Dist.] 1999, pet. ref'd). Because the evidence was properly admissible as to one defendant, we
cannot conclude that the court erred by admitting it. Where the evidence is admissible for a limited
purpose only and the trial court admits the evidence without limitation, the party opposing the offer
has the burden of requesting the correct limiting instruction. Plante v. State, 692 S.W.2d 487, 493
(Tex. Crim. App. 1985). In the absence of a request for a limiting instruction, the court's action in
admitting evidence without such an instruction cannot be raised on appeal. See Tex. R. Evid.
105(a). Here, no such limiting instruction was requested and the admission of the evidence cannot
be raised on appeal. 

Fifth Amendment Claim

 Little next contends that the court erred at punishment by refusing to allow her to invoke her
Fifth Amendment privilege against self-incrimination (as to the extraneous offense described
above)--while she was in the midst of testifying on her own behalf. Counsel correctly points out
that a convicted person nonetheless has the right not to testify at the punishment phase of trial. See
Mitchell v. United States, 526 U.S. 314, 326-27 (1999). However, the caselaw also recognizes that,
once a defendant decides to waive that right, he or she becomes a witness for all purposes--and can
be cross-examined or questioned as such by the State. See Felder v. State, 848 S.W.2d 85, 99 (Tex.
Crim. App. 1992); Cantu v. State, 738 S.W.2d 249, 255 (Tex. Crim. App. 1987); Cuba v. State, 905
S.W.2d 729, 733 (Tex. App.--Texarkana 1995, no pet.).

 To hold otherwise would permit a defendant to pick and choose the scope of his or her
testimony and allow the defendant to testify about his or her version of events without fear of being
confronted by the State. (5)
 Felder, 848 S.W.2d at 99. A defendant "has no right to set forth to the jury
all the facts which tend in his favor without laying himself open to a cross-examination upon those
facts." Williams v. State, 116 S.W.3d 788, 791 (Tex. Crim. App. 2003).

 In this case, Little had already testified at some length about her own character and had
provided substantial information about her own behavior, as well as that of Hankey and the various
other family members. The State asked Little (over the Fifth Amendment objection) if Hankey
sexually assaulted L.M. while she (Little) was present. Little answered "yes," but denied that she
was holding L.M. down and said that she (Little) was crying and asking Hankey not to have sex with
L.M. Little's testimony was that Hankey and L.M. were "doing drugs real bad" and admitted that
she had also used drugs.

 Counsel's argument is a blanket claim that the trial court erred by not allowing her to exercise
her Fifth Amendment right to remain silent to questions about this unadjudicated offense. At the
punishment hearing, the State is entitled to present evidence as to any matter the court deems
relevant to sentencing, including evidence of an extraneous crime or bad act that is shown beyond
a reasonable doubt to have been committed by the defendant. Tex. Code Crim. Proc. Ann. art.
37.07, § 3(a)(1). If the defendant voluntarily testifies, the defendant becomes subject to questioning
by the State on any subject matter which is relevant and such questioning does not violate the
defendant's right against self-incrimination. Felder, 848 S.W.2d at 99. The evidence of the prior
extraneous offense was relevant to the issue of punishment, and the trial court did not err by
overruling the objection.

 We affirm the judgment.



 Jack Carter

 Justice


Date Submitted: April 16, 2007

Date Decided: May 30, 2007


Do Not Publish
1. We will refer to the codefendant, Louie Matthew Hankey, as Hankey. His father is also
named Louie Hankey, and we will refer to him as Louie. 
2. Our opinion was issued in Hankey's case on May 24, 2007.
3. Little later testified that Hankey and L.M. had sex while she watched, that it was consensual,
and that she (Little) was crying uncontrollably at the time. She denied that she ever held L.M. down. 

4. Wilson also noted that a punishment-phase character witness' awareness of specific instances
of conduct may be tested on cross-examination and "not only was the State not required to prove to
the jury that the acts actually occurred, but it would have been improper for the State to attempt to
do so. Counsel does not argue that the State lacked the required good-faith basis for these questions
or that the questions were not relevant to the character traits at issue in the case. 71 S.W.3d at
350-51; see Rayme v. State, 178 S.W.3d 21, 27 (Tex. App.--Houston [1st Dist.] 2005, no pet.); In
re G.M.P., 909 S.W.2d 198, 210 (Tex. App.--Houston [14th Dist.] 1995, no pet.). 

5. Miranda teaches that, even though an accused has been warned and has waived his or her
rights, the accused may terminate the custodial interrogation at any point and reassert his privilege
against self-incrimination and his right to counsel. Hill v. State, 429 S.W.2d 481, 486 (Tex. Crim.
App. 1968); see Miranda v. Arizona, 384 U.S. 436 (1966). That stricture has not been expanded to
this type of situation.




 UnhideWhenUsed="false" Name="Light List Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00128-CR

                                                ______________________________

 

 

                                          JAROD TAYLOR,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 188th
Judicial District Court

                                                             Gregg County, Texas

                                                          Trial Court
No. 37,969-A

 

                                                       
                                           

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            After
he had initially been determined incompetent to stand trial, Jarod Taylor was
later determined competent and he entered an open plea of guilty to the charge
of aggravated sexual assault of a child. 
At that plea hearing, Taylor sought to be placed on deferred
adjudication community supervision.[1]  Instead, the trial court sentenced Taylor to
ten years incarceration.  Taylor now
appeals the trial courts judgment on two points of error:  (1) he maintains that his trial counsel was
ineffective because he failed to investigate the possible defense of insanity;
and (2) he contends that because trial counsel did not inform him of his
ability to enter a plea of not guilty by reason of insanity and he was unaware
of it, his plea was not entered voluntarily. 
We overrule Taylors points of error and affirm the trial courts judgment
and sentence.  

Background, Taylors Mental Status

            On
August 16, 2008, Taylor was engaging in sexual intercourse with his six-year-old
cousin when he was discovered by the victims ten-year-old brother. At the
time, Taylor was seventeen years old; he had been diagnosed with an IQ of about
eighty-six, and Taylors father testified that a doctor had described Taylor as
having the intelligence level of a sixth grader.  Upon being discovered, Taylor told the
ten-year-old not to reveal what he had seen; later, when the childrens
grandmother returned home, Taylor repeatedly interrupted when the ten-year-old
tried to tell the grandmother what had occurred.  When police came to question Taylor about the
offense, he told them, I know what this is about.  Taylor told the investigating detective that
while the victim was lying on a bed, Taylor reached for a comb on the headboard
when his penis accidently fell out of his pants and penetrated the young childs
vagina. 

            Within
a week of the offense Taylors court-appointed attorney, Craig Bass, visited
him in jail.  Bass described Taylor as scared
to death; Bass had difficulty communicating with Taylor about the offense and
charge.  Bass also said he believed, on
the strength of what he learned from Taylor in that first interview, that
Taylor understood the difference between right and wrong.[2]  Bass experienced difficulty in communicating
with Taylor during that interview and requested that Taylor be evaluated to
determine his competency to stand trial.[3]  In early October 2008, Taylor was examined by
a physician, who found Taylor could not effectively communicate with his
attorney and was therefore not competent to stand trial at that time.  This competency evaluation was presented to
the trial court about November 4, 2008; from the record before us, it appears
Taylor was admitted to a state hospital in the third week of January 2009.  While in the hospital, Taylor was
administered antipsychotic medications. 
Later, at the hearing on Taylors motion for new trial, there was
testimony that Taylor had been prescribed these or similar medications for some
time, and his mother saw to it that Taylor took the medications.  However, Taylors mother died about five
months before the sexual offense occurred and Taylor had become irregular about
taking his medications, if he took them at all.  On March 3, 2009, a second competency
evaluation was performed.  At this time,
Taylor was found competent to understand and participate in the legal
proceedings, including consulting and cooperating with his attorney.  Of particular relevance to the instant
appeal, the evaluation states that Taylor was able to name[] and accurately define[]
all four plea options available in the State of Texas. . . . Regarding the Not
Guilty by Reason of Insanity plea, Mr. Taylor stated, saying that you were
insane at the time of the crime, you did it but you were insane.[4]  

            The
record does not indicate when Taylor was discharged from the hospital.  On June 3, 2009, Taylor waived both
indictment and a trial by jury and entered an open plea before the trial
court.  At that plea hearing, Taylor
represented that his attorney had not pressured him to plead guilty, that he
himself made the decision to plead guilty, and that he was in fact guilty of
the charged offense of aggravated sexual assault of a child.  The trial court explained to Taylor that there
was no plea bargain agreement in place and that Taylor was eligible for
community supervision or, alternatively, that his sentence could range anywhere
between five and ninety-nine years imprisonment.  At the same time, the court explained that
the charged offense was a 3g offense[5] and
if Taylor were sentenced to prison, the law would require that he actually be
incarcerated at least half of the term to which he was sentenced.  The trial court discussed Taylors competency
history and asked Bass if he had been able to effectively communicate with
Taylor; Bass responded affirmatively.  The
trial court then asked Bass if he believed Taylor to be mentally competent;
Bass answered, Based on the Northeast [sic] Texas Mental Hospitals
assessment, yes.   

            Taylor
testified at the plea hearing; he told the trial court he was remorseful for
the sexual assault.  Taylor took
responsibility and clearly acknowledged that he knew at the time his actions
were wrong.  In doing so, he said that he
did not know what made him assault the young girl, but he knew it was wrong and
that he was hurting her, but that he did not think anyone would discover what
he had done.  Taylor admitted that when
the ten-year-old brother of the victim witnessed the assault, Taylor had told
the boy not to tell anyone; he acknowledged lying to the detective who
questioned Taylor when he told the detective the sexual contact was
accidental.  Taylor and his father (who
also testified at the plea hearing) asked the trial court to place Taylor on
deferred adjudication community supervision. 
Instead, the trial court sentenced Taylor to ten years incarceration,
and Taylor immediately announced that he wished to appeal the judgment.

            Two
months later, the trial court heard Taylors motion for new trial.  Trial counsel Bass testified that he would
pursue a defense of insanity where the defendant obviously doesnt know the
difference between right and wrong, which fits the definition of insanity, and
Bass believed that Taylor understood the difference between right and
wrong.  In contrast to his testimony at
the plea hearing, Taylor testified that he did not remember the offense or the
events surrounding it, including the fact that he was discovered in the act by
the ten-year-old cousin.  Taylor said
that at the time the offense occurred, he was not taking his medications, and
when he did not take those medications, he did not understand the difference
between right and wrong.  When asked to
explain the statement he gave to police, that the penetration occurred
accidentally when Taylor was reaching for a comb, Taylor said, Well, I wasnt
- - I didnt know what to say to them [the police].  I wasnt in my right mind when he asked me
them questions.  Taylor did remember
talking to the Gregg County community supervision officer Rex Fennell; he told
Fennell he did not want to talk about the offense, not because Taylor knew it
was wrong, but because it was embarrassing. 
The trial court denied Taylors motion for new trial.[6]   

Ineffective Assistance of Counsel 

            The standard for establishing a
claim of ineffective assistance of counsel is well established.  Strickland v. Washington, 466 U.S. 668
(1984).  To prevail on this claim, an
appellant must prove by a preponderance of the evidence (1) that his counsels
representation fell below an objective standard of reasonableness and (2) that
the deficient performance prejudiced the defense.  Id. at 689; Rosales v. State, 4
S.W.3d 228, 231 (Tex. Crim. App. 1999). 
To meet this burden, the appellant must prove that the attorneys
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for the attorneys deficiency,
the result of the trial would have been different.  Ex parte Martinez, 195 S.W.3d 713, 730
(Tex. Crim. App. 2006); Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).  Under this standard, a claimant must prove
that counsels representation so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having produced a
just result.  Strickland, 466 U.S.
at 686.  When a defendant challenges the
voluntariness of a plea entered upon the advice of counsel, contending that his
counsel was ineffective, the voluntariness of the plea depends on (1) whether
counsels advice was within the range of competence demanded of attorneys in
criminal cases and, if not, (2) whether there is a reasonable probability
that, but for counsels errors, the defendant would not have pled guilty and
would have insisted on going to trial.  Ex parte Moody, 991 S.W.2d 856, 85758
(Tex. Crim. App. 1999) (applying Strickland,
466 U.S. at 694) (A reasonable probability is a probability sufficient to
undermine confidence in the outcome.). 
In a situation where counsel failed to advise a defendant of a possible
affirmative defense, the determination of the prejudice inquiry of an
ineffective assistance claim will depend largely on whether the affirmative
defense likely would have succeeded at trial. 
Hill v. Lockhart, 474 U.S. 52,
59 (1985). 

            Taylors
claim of ineffective assistance of counsel rests upon his assertion that his
counsel did not adequately investigate the possibility of raising an insanity
defense.  Taylor bases his claim on the
Texas Court of Criminal Appealss holding in Ex parte Imoudu, 284 S.W.3d 866 (Tex. Crim. App. 2009).  In that case, Imoudu had been diagnosed with
various mental illnesses about six or seven months before the commission of the
offense with which he was charged; counsel neither investigated nor discovered
the medical records detailing those mental illnesses, despite having concerns
about Imoudus competency as evidenced by the fact that he requested the trial
court to order a competency examination for Imoudu.  (Imoudu was found competent to stand
trial.)  Imoudus trial counsel remained
so concerned about Imoudus behavior that he advised Imoudu and his family to
accept the States plea offer because counsel was worried about how Imoudu
might behave should he have taken the stand to testify.  Id. at
870.

            Imoudu
pled guilty and was sentenced to seventeen years incarceration.  Post-conviction, his counsel in a habeas
corpus proceeding discovered extensive medical records, compiled while Imoudu
was jailed on the felony charges to which he eventually pled guilty, as well as
a misdemeanor offense, for which Imoudu had been jailed six months before the
felony arrest.  Id. at 868.  These medical
records indicated significant mental illness; in jail, Imoudu was prescribed
antipsychotic medications, used to treat schizophrenia.  Post-conviction, a psychiatrist reviewed  these medical records and concluded that at
the time of the offense, Imoudu suffered from untreated schizophrenia; as a
result of that illness, he could not discern right from wrong and was,
therefore, insane.  Id. at 86869, 871. 

            Taylors
case bears important distinctions from Imoudu.  Although Taylors trial counsel, Bass, did
say when he first met with Taylor that he had difficulty communicating with him
and this led Bass to request Taylor be examined for competency, Bass also said
that at that initial meeting, Taylor told him about the offense.  The manner with which Taylor told him of the
occurrence led Bass to feel like [Taylor] knew the difference between right
and wrong when he was explaining it to me. 
Bass said it would be his practice to present an insanity defense[7]
where the defendant did not know the difference between right and wrong, but
that Bass believed Taylor comprehended that difference.  Thus, the record demonstrates a basis for
Basss trial strategy and for not presenting a defense of insanity.  

            Additionally,
we find it significant that immediately after Taylor was caught in the act of
sexual assault, he engaged in conduct which was plainly an attempt to hide his
culpability:  (1) he told the ten-year-old
cousin who witnessed the offense not to tell anyone; (2) when the childs
grandmother returned home and the ten-year-old tried to tell her what had
happened, Taylor repeatedly interrupted the boy; (3) when police questioned
Taylor, he told them,  I know what this is about, and he told the detective
investigating the case that he had only been reaching for a comb when his penis
fell out and accidently penetrated the young victim.  This conduct shows cognizance of guilt, or
that Taylor knew he had done something wrong. 
Conversely, in Imoudu, there
is no indication the defendant engaged in any conduct trying to distance
himself from culpability or indicating he knew his acts were wrong.  In Martinez,
195 S.W.3d at 72122, the Texas Court of Criminal Appeals found counsel was not
ineffective for failing to present a mitigation defense of temporary insanity
where there was evidence Martinez knew his acts were wronghe confessed to
police; denied taking drugs or alcohol (his habeas claim of ineffective
assistance said trial counsel should have pursued a temporary insanity defense
based on voluntary intoxication); and he told friends he could not believe he
had committed the murders.  We find Taylors
acts evincing a consciousness of guilt a significant distinction from Imoudu. 


            Taylor
nonetheless points to similarities in his case and the circumstances of Imoudu. 
Where Imoudus trial counsel failed to discover the medical records
indicating the possibility of mental defects, Taylor cites to Basss admitted
failure to research psychological evaluations compiled about two months before
the charged offense.  Bass acknowledged
doing no research on either the medical reports provided by Taylors family or
on Abilify, an antipsychotic medication the family had indicated to Bass that
Taylor was supposed to take.  However,
Bass did testify he gave the medical reports to the physician who did the first
competency examination of Taylor.  These
medical reports, consisting of evaluations by a psychologist and a psychiatrist
performed in June and July 2008, made no suggestion that Taylor suffered from
hallucinations or delusions or that Taylor was unable to discern right from
wrong.  Although Taylor and his father
both testified that Taylor had been diagnosed as bipolar and as suffering
paranoid schizophrenia, there is nothing in the record substantiating these
claims.  It is true the doctor who
performed the first competency evaluation, finding Taylor not competent to
confer with his attorney and stand trial, diagnosed [p]ossible prodromal[8]
schizophrenia and stated Taylors age is during the peak age of onset of
schizophrenia (late teens to early 20s), but the evaluation also states that
the scope of the evaluation did not extend to Taylors sanity at the time of
the offense.  This evidence is much
different, and substantially weaker, than that present in Imoudu.

            Also
different from Imoudu, Taylor
presented no expert evidence supporting a possible assertion of insanity at the
time of the offense.  Whereas Imoudu had
an affidavit from a psychiatrist who concluded that Imoudu did not know right
from wrong at the time of the offense, Taylor presented his own testimony that
due to his intermittent or nonexistent use of his prescribed medications, he
did not know right from wrong at the time of the offense.  He also presented testimony from his pastor,
who offered his nonexpert opinion that at the time of the offense, Taylor did
not know right from wrong.  This lay
testimony bears a striking difference to the expert evidence offered in Imoudu.

            Because
Bass believed Taylor could discern right from wrong, and Taylor has presented
no significant evidence to undermine Basss belief, we cannot say Bass was
ineffective for failing to further investigate the possibility of an insanity
defense.  Our conclusion is supported by
the lack of expert evidence of the kind present in Imoudu.  

Prejudice

            Even if, under Imoudu, we were to find trial counsel to have been ineffective for
his failure to investigate an insanity defense, Taylor has not demonstrated
prejudice, or that the outcome of his trial would likely have been
different.  At the new trial hearing,
Taylor testified he would not have entered a guilty plea if his trial counsel
had told him of the possibility of pleading not guilty by reason of insanity,
indicating that he did not know that this was a possible strategy.  However, where a defendant claims he or she
would not have pled guilty and insisted on going to trial but for trial counsels
failure to advise the defendant of a possible affirmative defense, the Strickland prejudice analysis must
give consideration to whether the affirmative defense would likely have been
successful.  Hill, 474 U.S. at 59; Imoudu,
284 S.W.3d at 870. 

            Taylor
has failed to demonstrate that he could have successfully urged an insanity
defense had he gone to trial on this matter. 
As pointed out above, the only evidence he produced (post-trial) that he
did not know the difference between right and wrong, was the nonexpert
testimony of Taylor and his pastor.[9]
 The Texas Court of Criminal Appeals
relied on the psychiatrists affidavit in finding the prejudice prong to have
been satisfied in Imoudu.  Imoudu,
284 S.W.3d at 871.  Further, nothing in
the psychological evaluations done on Taylor earlier in the summer of the
offense establish a mental defect of such magnitude as to impede his ability to
discern right from wrong.  Taylor has
failed to show prejudice as required by Strickland;
therefore, his claim of ineffective assistance of counsel fails.  See
Conrad v. State, 77 S.W.3d 424, 42627
(Tex. App.Fort Worth 2002, pet. refd) (although counsel was ineffective for
failing to investigate Conrads mental status, failure to put on any evidence
he was actually insane at the time of offense doomed claim of ineffective
assistance).[10]  

Voluntariness of Plea

            Taylors second point of error
claims that because he was not advised of the possibility of pleading not
guilty by reason of insanity, his plea of guilty was not made voluntarily.  Taylor presents no authority for this
assertion.  Rather, he cites his mental
illness as evidence he did not know or appreciate the ramifications of his
plea.   

            At
the plea hearing, the trial court admonished Taylor of the range of punishment
for the charged offense and of the requirement to register as a sex offender
upon conviction for the offense at issue. 
He further pointed out that there was no plea bargain agreement in
place.  The trial court also summarized
the competency proceedings and discussed with trial counsel whether counsel
believed Taylor to be competent, and counsel replied in the affirmative,
referring to the second competency assessment. 
The trial courts admonishments substantially complied with the
requirements of Article 26.13 of the Texas Code of Criminal Procedure.  Tex.
Code Crim. Proc. Ann. art. 26.13 (Vernon Supp. 2009).  Thus, a prima facie showing was made that
Taylors plea was entered knowingly and voluntarily.  After such a prima facie showing, the burden
shifted to Taylor to demonstrate that he did not fully understand the
consequences of his plea and that he thereby suffered harm.  Martinez
v. State, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998).  

            Taylors
claim that his plea was not made voluntarily is undermined by the fact that
before he entered his guilty plea, he apparently discussed the insanity defense
with the examining physician while at the state hospital.  Based on Taylors statements recited in the
second competency evaluation, Taylor was familiar with the meanings of his
different options:  a plea of guilty; a
plea of not guilty; a no contest plea; and a plea of not guilty by reason of
insanity.  He was able to discuss with
the doctor various aspects of trial proceedings, including the Fifth Amendments
protection against compelled testimony. 
This rebuts Taylors assertion that he was unaware of the possibility of
an insanity defense.

            The
trial court explicitly found that Taylors plea was made freely and voluntarily
and that he was mentally competent.  As
for the requirement an appellant must demonstrate he did not understand the
consequences of his plea such that the appellant suffered harm, we refer to our
discussion above regarding the dearth of evidence supporting an insanity
defense in this case.  Taylor has not met
his burden of proving his plea was not voluntarily made; we overrule his second
point of error and affirm the trial courts judgment and sentence.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          June
30, 2010

Date Decided:             July
16, 2010

 

Do Not Publish

 











[1]Although
at the plea hearing neither Taylor nor his counsel used that term and the trial
court did not mention deferred adjudication and referred to Taylors request
for probation, we assume this was Taylors goal, as only deferred
adjudication community supervision was available to him in light of the charged
offense.  See Tex. Code Crim. Proc.
Ann. art. 42.12, §§ 3, 5 (Vernon Supp. 2009).  Also, one piece of paperwork filled out by
Taylor for the plea hearing said the defenses plea recommendation was for
deferred adjudication.   





[2]Bass
said, We had discussed what had occurred when I first met Jarod that first day
on August 21st, I sat down and I asked him what happened, and he immediately
told me what happened.  It - - and it - -
he made me feel like he knew the difference between right and wrong when he was
explaining it to me.  

 





[3]See Tex.
Code Crim. Proc. Ann. art. 46B.003 (Vernon 2006).  





[4]The
evaluation goes on to state Taylor, while in the hospital, had no problem
expressing his thoughts, wants and needs. 
His verbal ability is suggestive of average intelligence and he is
considered to have the ability to testify relevantly should he choose to do
so.  When asked if he could be forced to
testify, he responded, No, because its the 5th Amendment.  

 





[5]See Tex.
Code Crim. Proc. Ann. art. 42.12, § 3g; Tex. Govt Code Ann. § 508.145(d) (Vernon Supp. 2009).





[6]Taylors
appellate point does not claim the trial court erred in failing to grant him a
new trial, but rather claims his trial counsel was ineffective.  Thus, we will not review the trial courts
decision on the motion for new trial for an abuse of discretion; we will
analyze the effectiveness of trial counsel under the applicable law.  





[7]It
is an affirmative defense to prosecution that, at the time of the conduct
charged, the actor, as a result of severe mental disease or defect, did not
know that his conduct was wrong.  Tex. Penal Code Ann. § 8.01(a) (Vernon
2003).  





[8][P]remonitory;
indicating the onset of a disease or morbid state.  Dorlands
Illustrated Medical Dictionary 1513 (30th ed. 2003).





[9][P]redicated
lay opinion testimony when considered with facts and circumstances concerning
an accused and of the offense may be sufficient to raise the issue [of
insanity].  Pacheco v. State, 757 S.W.2d 729, 736 (Tex. Crim. App. 1988).  That premise, though, along with the
testimony of Taylor and his pastor, in this case, do not convince us the
insanity defense could have been successfully raised here, i.e., that Taylor
was likely to have been acquitted had he presented the defense at trial.  Cf.
Reyna v. State, 116 S.W.3d 362, 369
(Tex. App.El Paso 2003, no pet.), where [n]o rational jury could decide from
the evidence presented that Reyna was able to appreciate the wrongfulness of
his actions.   

 





[10]See also Vaughn v. State, No.
14-08-00522-CR, 2009 WL 3294998 (Tex. App.Houston [14th Dist.] Oct. 15, 2009,
pet. dismd) (mem. op., not designated for publication) (assuming arguendo
counsels failure to investigate was ineffective, mere speculation as to what a
psychiatrist might have said was insufficient to prove prejudice) (we cite this
case not as authority, but for its persuasive value).