In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00119-CV

                                                ______________________________

 

 

                                     MICHAEL KENNEDY,
Appellant

 

                                                                V.

 

              JANICE STAPLES, WILLIAM HOUSE, MARK CALHOON, 

PAM FLETCHER, BASCOM
BENTLEY, DEBORAH OAKS-EVANS,

CATHY LUSK, AND DARCY
STARCHER, Appellees

 

 

                                                                                                  


 

 

                                       On Appeal from the 369th
Judicial District Court

                                                          Anderson
County, Texas

                                                       Trial Court
No. XXX-XX-XXXX

 

                                                                                                  


 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss








                                                                   O P I N I O N

 

            A
well known Aesop’s fable[1]
tells of a shepherd boy who repeatedly cries “wolf” to amuse himself at the
expense of the nearby villagers, who faithfully run to his aid many times and
each time find that his alarm is false. 
In the tale, when the wolf actually does start eating the boy’s sheep,
the villagers, having grown tired of the boy’s game, fail to respond to his one
truthful cry.

            Michael
Kennedy has, for decades, been a prolific[2] “writ
writer” and a Texas prison inmate.

            Kennedy
appeals the latest ruling on one of his filings, the dismissal by the District Court
of Anderson County of Kennedy’s putative civil rights lawsuit complaining of a
wide assortment of defendants, including all members of the Texas Court of
Criminal Appeals, all four district judges having jurisdiction in Anderson
County, a clerk and deputy clerk of a court of appeals, a district clerk, and
an attorney.[3]  This latest effort by Kennedy, to the extent
it can be understood, is clearly frivolous, consistent with the ruling of the
trial court dismissing it.  Kennedy
continues to cry “wolf,” yet, he still sets out only frivolous claims.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 14.003 (Vernon 2002) (suit frivolous or malicious and claim’s realistic
chance of success slight).

            Here—without
reciting any supporting facts, and in an effort to collaterally attack his
latest conviction—in a conclusory, yet imaginative, fashion, Kennedy alleges a
vast conspiracy of numerous judges, attorneys, and court personnel.[4]  Among Kennedy’s wide-ranging and only
sometimes cohesive claims, as best as we can decipher them, are allegations,
unsupported with any alleged facts, that the district clerk conspired to injure
him by refusing to file an application for writ of habeas corpus and either
destroyed or lost documents, that the attorney representing him conspired by
denying his right to petition, that the judges all conspired against him
because they knew he had committed no crime or offense, that the appellate
clerks conspired against him by denying him permission to file a petition for
rehearing or his petition for indigent records, that a deputy clerk “intentionally
filed false and malice petition with the Texas Court of Criminal Appeals
stating that Michael Kennedy filed a (PDR),” that a deputy clerk “used malice
facts that William M. House, Jr. is Kennedy Counsel on appeals to deny Kennedy
his rights and access to court under deception and trade practice acts and
discriminations.”  All of these alleged
wrongdoings are in connection with a recent conviction and the subsequent
appeal.  In essence, Kennedy is suing
based on an alleged, vast, vague conspiracy against him.[5]  Kennedy’s suit is essentially an attempt
through a civil lawsuit to collaterally attack his criminal conviction and
sentence.

            In
his prayer, Kennedy asks for injunctive relief (a) to remove or recuse all
named judges, (b) to order the clerks to file his application for writ of
habeas corpus, and (c) to prohibit the appellate court clerks from stopping
Kennedy from filing “writes [sic] or pleadings . . . and using [sic] false acts
that William M. House is Michael Kennedy counsel.”  Notably, Kennedy does get around to asking
for damages of $50,000.00, plus punitive damages and costs, from all
defendants.[6]

            Some
issues raised in Kennedy’s appellate brief are either unconnected or loosely
connected with Kennedy’s underlying pleadings. 
Kennedy argues that the trial court erred by dismissing his petition
because all four of the district judges of Anderson County as named in his
petition should have recused themselves, as they had been named as defendants
in the original complaint.  He also puts
a measure of blame on the justices of the Twelfth Court of Appeals:

12th court of appeals justices should not have
recused themslef [sic] from appeals and when this claims based on trial judges
should not have rule or dismiss this suit apply as 12th Court of Appeals
justices to recuse themslef [sic] from ruling on complaint or dismissing suit
on themslef [sic].

 

            Kennedy
contends that, because he named every district judge in Anderson County as a
defendant, none of them could rule on his petition.  He also contends that the Texas Court of
Criminal Appeals, the Twelfth Court of Appeals, the district attorney, attorney
William House, Jr., and District Judge Mark Calhoon acted “in racial
discrimination” to deny him the right to represent himself by appointing House
to “forclose [sic] his innocnce [sic] when no crime committed.” 

            Kennedy
claims that those same courts refused to address his application for habeas
corpus or allow his claims to be considered on appeal or to make findings of
fact about why he was in prison in a different case.  Kennedy contends that the trial court should
be required to conduct an evidentiary hearing regarding his allegations that
documents were not filed. 

            Kennedy
then raises multiple arguments complaining about the failure to immediately
conduct the retrial on sentencing by April 30, 2010, claiming that, because the
April 30, 2010, mandate was not obeyed, his rights were denied.  He goes on to complain that the clerks at the
Twelfth Court of Appeals, that his court-appointed counsel, and that the Texas
Court of Criminal Appeals denied his right to file a petition for rehearing or
a petition for discretionary review (PDR). 
Kennedy claims those rights were violated because his PDR was denied.[7]

            We
affirm the dismissal, because (1) the trial judge, though a named defendant,
was not “interested” in Kennedy’s action; and (2) Kennedy’s action was
frivolous.

(1)        The
Trial Judge, Though a Named Defendant, Was Not “Interested” in Kennedy’s Action

            This Court has already twice
addressed a claim by Kennedy that a trial judge was required to remove herself
from a lawsuit Kennedy filed.  In our
opinion in Kennedy v. Wortham,[8]
314 S.W.3d 34 (Tex. App.—Texarkana 2010, pet. denied), as well as in the companion
memorandum opinion, we concluded, among other things, that—because Kennedy had
not sought money damages—the judge that ruled on the cases was not disqualified
under the constitutional provision, as he had no direct pecuniary or personal
interest in the case.

            Here,
however, Kennedy’s pleading does seek
monetary damages from each of the parties, including the trial judge in whose
court the pleading was filed.  Though
Kennedy’s claims are facially specious, if, under the controlling caselaw, the
trial judge was disqualified and lacked authority to rule on his case, then the
dismissal is void, and there is no authority that would allow us to review the
case on the merits.  We would thus be
prohibited from determining the validity of the dismissal.

            Disqualification
cannot be waived, but can be raised at any time.  Buckholts
Indep. Sch. Dist. v. Glaser, 632 S.W.2d 146, 148 (Tex. 1982).  As a general rule, a judge who is a party to
a suit, even though he or she has not been served with process, may not preside
over that case, decide any matters requiring judicial discretion, or approve
the minutes of the court.  Hawpe v. Smith, 22 Tex. 410 (1858).  No judge shall sit in any case wherein he or
she may be interested.  See Tex.
Const. art. V, § 11.  Judges shall
disqualify themselves in all proceedings in which they have an interest in the
subject matter in controversy.  See Tex.
R. Civ. P. 18b(1)(b).  The
interest that disqualifies a judge is an interest, however small, which rests
on a direct pecuniary or personal interest in the result of the case.  Cameron
v. Greenhill, 582 S.W.2d 775, 776 (Tex. 1979) (per curiam).  If a judge is disqualified, the judge is
without jurisdiction to hear the case; therefore, any judgment rendered is void
and a nullity.  Glaser, 632 S.W.2d at 148; Gulf
Mar. Warehouse Co. v. Towers, 858 S.W.2d 556, 560 (Tex. App.—Beaumont 1993,
writ denied); Lone Star Indus., Inc. v.
Ater, 845 S.W.2d 334, 336 (Tex. App.—El Paso 1992, no writ).

            The
question before this Court is one we have not faced:  because Kennedy’s petition nominally seeks
money damages from the trial judge, does the law necessarily disqualify the
trial judge?  If so, the law permits
Kennedy, and others, to repeatedly and blatantly “shop” for judges and
otherwise abuse the legal system, even allowing them to craft a set of
circumstances whereby no judge in a county, or ultimately even in the state,
could properly hear a case, even a case without any foundation.  Our research has found no reported case in
this State with this sort of repeated, willful behavior on the part of a civil
plaintiff.

            Under
certain circumstances, a judge may preside over a case despite being named as a
defendant.  See Cameron, 582 S.W.2d at 776; see
also Hidalgo County Water Control & Improvement Dist. No. 1 v. Boysen,
354 S.W.2d 420, 423 (Tex. Civ. App.—San Antonio 1962, writ ref’d).  None of these cases, however, involve Kennedy’s
current tactic, both naming the trial judge as a defendant and seeking money
damages against him or her.

            The
language used by the Texas Supreme Court in Cameron
is instructive here.  Cameron was an
attorney who sued the nine justices of the Supreme Court of Texas, complaining
of the court’s order setting a special fee assessment against members of the
State Bar of Texas.  See Cameron, 582 S.W.2d at 776. 
Upon reaching the Texas Supreme Court, the attorney argued that the
justices were disqualified, or should recuse themselves, because they were all
named as defendants in the suit.  Id. at 775–76.  The court held that its justices were not
disqualified because, in reality, they had no more direct or pecuniary interest
in the case than any other member of the bar association.  Id.
at 776.  Regarding disqualification, the
court stated:

In applying the rule of disqualification, we
should endeavor to follow the spirit and intent of the Constitutional
rule.  The Constitution does not
contemplate that judicial machinery shall stop. 
If this is threatened, the doctrine of necessity will permit the judge
to serve.  Respondents are parties only
because they are named as parties.  To
hold that merely naming a judge as a party would disqualify him [and] would put
power in the hands of litigants to frustrate our judicial system.

 

Id. (citation omitted).

            Here,
Judge Bentley, as a named defendant from whom damages were sought, superficially appears to have a direct
pecuniary or personal interest in this case. 
We believe, however, that the question is not whether a pleading
facially seeks damages against a judge, but whether that pleading actually sets
out a colorable cause of action for damages against that judge.  This pleading does not.

            There
is nothing to suggest that the trial judge here was actually “interested” in
Kennedy’s case, as there is no allegation sufficient to potentially impose any
monetary damages.  This complaint offers
only an array of conclusory allegations against numerous public servants, with
no pleading of supporting facts, suggesting only that the trial judge and
others engaged in a vast, vague conspiracy against Kennedy.  Without a real, colorable claim for damages,
that does not make the trial judge “interested.”

            Kennedy
has been more prolific in his abuse of the legal system than any individual in
our collective memory.  An earlier
footnote provides overall appellate statistics from Kennedy’s filings.  According to court records, in just the past
five years, Kennedy has filed 63 separate proceedings with the Twelfth Court of
Appeals in Tyler—35 original proceedings, 13 civil appeals and 15 criminal
appeals.[9]  In a substantial number of the civil
proceedings, he has sued two or more of the Anderson County district judges,
the district attorney for Anderson County, and various officials within that
district clerk’s office.  His lawsuits
uniformly failed.

            In
his four most recent lawsuits, and a mandamus decided by this Court, Kennedy
has shifted tactics, seeking changes of judges by raising allegations of
matters that would normally mandate the appointment of a different judge.  By alleging, with no supporting facts, that
all judges were involved in a vast conspiracy to convict an innocent man,
Kennedy apparently thinks he has discovered how to manipulate the system to
obtain a substitute judge—from a different region or county—one presumably more
to his liking, both at the trial and appellate level.  If we found automatic disqualification, then
the judgment dismissing Kennedy’s lawsuit as frivolous is void, and Kennedy’s
suit would be remanded for the appointment of yet another judge, this one from
another county.  Kennedy would have
successfully eliminated all four of the judges presiding in Anderson County.

            We
do not find this result to be required or in keeping with sound judicial
policy.  Courts have an inherent judicial
power to exercise their jurisdiction, to administer justice, and to preserve
their independence and integrity.  Eichelberger v. Eichelberger, 582 S.W.2d
395 (Tex. 1979).  Kennedy’s manipulation
and gaming of the judicial system impinges on the duty of the trial and
appellate courts to administer justice while preserving valuable judicial
resources for the benefit of all legitimate litigants.  The law cannot permit such abuse to continue.

            No
particular litigant is less entitled than any other to the judicial resources
provided by the citizens of this state. 
Kennedy, however, due to his continued and systematic abuse of the
judicial system of this state and beyond, has usurped for himself a lion’s
share of those resources.  We would be
remiss in our duties if we did not acknowledge Kennedy’s abuses and act
accordingly to prevent their recurrence. 
To sustain Kennedy’s request to disqualify the trial judge would reward
Kennedy’s malfeasance and gamesmanship—while simultaneously imposing no penalty
for his actions.  It would sanction his
abuse.

            There
is still another, independent reason the trial judge was not “interested” in
Kennedy’s suit.  Kennedy’s complaints all
revolve around acts taken by the trial judge in connection with the underlying
criminal proceeding, and the way in which the judge allegedly allowed or
encouraged Kennedy’s “improper” conviction.

            These
efforts to obtain relief run headlong into the concept of judicial immunity.  A judge acting in his or her official
judicial capacity enjoys absolute immunity from liability for judicial acts
performed within the scope of jurisdiction.  Stump v.
Sparkman, 435 U.S. 349, 356–57 (1978) (judge not deprived of immunity
because action taken was in error, was done maliciously, or was in excess of
authority; immunity fails only when judge acts in clear absence of
jurisdiction); Turner v. Pruitt, 161
Tex. 532, 342 S.W.2d 422, 423 (1961).  “Judges
enjoy absolute judicial immunity from liability for judicial acts, no matter
how erroneous the act or how evil the motive, unless the act is performed in
the clear absence of all jurisdiction.”  Alpert v. Gerstner, 232 S.W.3d 117, 127
(Tex. App.—Houston [1st Dist.] 2006, no pet.).

            The
cases recognize that, while protecting the individual judge, this policy
likewise serves to protect the public “whose interest it is that the judges
should be at liberty to exercise their functions with independence, and without
fear of consequences.”  Bradley v.
Fisher, 80 U.S. 335, 349 n.16 (1871); Dallas
County v. Halsey, 87 S.W.3d 552, 554 (Tex. 2002).

            This
absolute judicial immunity extends to civil rights cases when a judge acts in a
judicial capacity.  Forrester v.
White, 484 U.S. 219, 228–30 (1988).  That
holding was expanded by statute when Congress enacted the Federal Courts
Improvement Act of 1996, which amended 42 U.S.C. § 1983 to provide that, in any
action brought against a judicial officer for an act or omission taken in such
officer’s judicial capacity, even injunctive relief shall not be granted unless
a declaratory decree was violated or declaratory relief was unavailable. 
It appears that the purpose of that amendment was to strengthen judicial
immunity protections even beyond their position at the time Forrester was decided.  LeClerc
v. Webb, 270 F.Supp.2d 779, 793 (E.D. La. 2003).

            Kennedy’s
complaints of the trial judge are directed exclusively at the judge’s judicial
functions, with generic allegations of wrongdoing or failures in his exercise
of those activities.  Judicial immunity
is absolute in this situation, and thus no recovery against the trial judge
would be possible.

            Under
these unique facts, we decline to require disqualification when (1) the
underlying action against the trial judge is, on its face, wholly unsupportable
and is for actions taken completely within the judge’s judicial function, thus
eliminating any possibility of the trial judge’s “interest” in the case; (2)
Kennedy has repeatedly abused the judicial system with claims that are fully without
merit; and (3) Kennedy’s choice of defendants and the type of recovery
sought are made, at least in part, for the purpose of eliminating particular
judges as arbiters.  We conclude as a
matter of law, in this extraordinary situation, that the trial judge was not
disqualified from dismissing Kennedy’s case.

(2)        Kennedy’s Action Was
Frivolous

            Beyond
the issue of disqualification, did the trial court abuse its discretion by
dismissing Kennedy’s lawsuit as frivolous? 
It did not.

            A
complaint that lacks an arguable basis in law or in fact is frivolous.  Johnson
v. Lynaugh, 796 S.W.2d 705, 706 (Tex. 1990) (per curiam).  Kennedy’s complaint is frivolous, as it lacks
any such arguable basis.  Also, our
previous judicial-immunity discussion applies here, as well, adding another
reason that Kennedy’s actions against the named judges are frivolous.

            Kennedy
raises a series of contentions in which he attempts to reach the ultimate
point:  that his lawsuit was not
frivolous, and thus the trial court abused its discretion by dismissing his
lawsuit.  These issues attempt to state a
claim that the named defendants conspired to violate Kennedy’s civil
rights.  See 42 U.S.C.A. § 1983, et. seq. (West, Westlaw current through
2011).

            We
have reviewed Kennedy’s claims as set out in his petition.  Insofar as they constitute an attempted
collateral attack on the procedures or results of his criminal trial, Kennedy’s
claims are not allegations properly addressed in a civil proceeding.  Essentially, Kennedy claims that the judges
conspired in his conviction despite knowing that he was innocent.  A jury
has found otherwise, an appeal was brought from the conviction, and the
conviction was affirmed.  There is no
viable civil claim concerning his criminal case that can be brought.

            Further,
Kennedy’s petition contains only a bare allegation that a conspiracy exists,
lacking any allegation or explanation of any fact that would provide a basis
for the claim.  Kennedy argues that his
conviction shows the existence of conspiracy. 
It does not.  Kennedy’s conviction
reflects the fact that a jury of his peers was convinced beyond a reasonable
doubt that he committed the crime at bar. 
The mere fact that he was convicted in no way supports a claim of civil
conspiracy.[10]

            To
state a claim for civil conspiracy, Kennedy had to allege that there were (a)
two or more persons, (b) an object to be accomplished, (c) a meeting of the
minds on the object or course of action, (d) one or more unlawful, overt acts,
and (e) damages as a proximate result of such conspiracy.  Profitlive
P’ship v. Surber, 248 S.W.3d 259, 261 (Tex. App.—Fort Worth 2007, no
pet.).  In Vacca v. Farrington, 85 S.W.3d 438, 441–42 (Tex. App.—Texarkana
2002, no pet.), the inmate brought a Section 1983 civil rights action against
prison officials, alleging that, in retaliation for filing a federal suit
complaining of staff misconduct, he was subjected to, among other things, the
filing of false disciplinary actions against him, with specific facts alleged
to support his claim.

            In
contrast to Vacca, Kennedy never
alleged facts to show that any agreement existed, or that any concerted action
was taken against him.  Indeed, he does
not even allege that any particular improper actions were taken by the
defendants.  Kennedy failed to allege
sufficient facts to support his claim of conspiracy.  Thus, the trial court did not abuse its
discretion by dismissing those portions of his action.

            Kennedy
also raises a series of contentions not related to his petition, but generally
complaining about the length of time that had expired before his resentencing
hearing was heard pursuant to the reversal of punishment in the underlying
criminal case.  Those issues are not part
of this lawsuit, and are not properly before us.

            Kennedy
also complains because the Twelfth Court of Appeals and the Texas Court of
Criminal Appeals have not allowed filing of all documents and habeas applications
he has presented to them.  These matters
are involved with his failed collateral attacks on his conviction and are not
civilly actionable absent extraordinary circumstances showing a complete
failure of the system.  Kennedy has
alleged or shown no such extraordinary circumstances or failure.  Kennedy is discontent because he has not been
found innocent.  He has alleged nothing
that would justify civil relief.

            Beyond
the above, Kennedy makes additional complaints about the justices of the
Twelfth Court of Appeals, but we cannot glean the nature of his contention from
his complaints’ lack of coherence.  We
overrule those complaints because Kennedy has inadequately briefed these points
by neglecting to present argument and authorities as required by Rule 38.1(h)
of the Texas Rules of Appellate Procedure. 
Cardenas v. State, 30 S.W.3d
384, 393 (Tex. Crim. App. 2000); see Tex. R. App. P. 38.1(h).

            Further,
Kennedy’s complaints regarding the clerk’s refusal to withdraw some unspecified
PDR, which he alleges was presented by the counsel he wished to remove, shows
no support in the record, as it appears that the petition was filed pro se.  See http://www.cca.courts.state.tx.us/
opinions/Case.asp?FilingID=271809.


            Kennedy
also argues that the trial court violated his rights by not following the
mandate of the Twelfth Court of Appeals. 
The mandate was followed.  Even if
that were not the case, Kennedy’s remedy would not be by a civil lawsuit
seeking enforcement of the mandate.

            Similarly,
Kennedy’s claims that the clerk of the Twelfth Court of Appeals and Kennedy’s trial
attorney, along with a host of others, denied his rights by refusing to allow
him to file additional documents in attempting to obtain a rehearing in the
criminal conviction or PDR following are unavailing.  Those matters are all governed by rules of
procedure, and he has no available civil complaint for the application of those
rules to his case.

            Although
Kennedy intended to complain about many additional matters in his appeal, the
brief is so illegible and incoherent that we cannot clearly glean any further
arguments therefrom, and we will not speculate regarding the nature of those
arguments.

            Kennedy’s
petition contains no facts that would justify any claim seeking civil
relief.  The trial court did not abuse
its discretion in dismissing Kennedy’s lawsuit as frivolous.

            We
affirm the judgment.

 

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

Date Submitted:          February
11, 2011

Date Decided:             March
1, 2011











[1]“The
Boy Who Cried Wolf,” an Aesop’s fable also known as “The Shepherd Boy and the
Wolf.”

 





[2]To
say that Kennedy has been a frequent user of the Texas judicial system is an
understatement.  A cursory survey of just
Texas appellate courts reveals that, since the mid-1980s, Kennedy has filed with
the Texas appellate courts 253 separate proceedings, most of them since 2000:

 


 
 
 Number of Proceedings Filed by Kennedy
 in Texas Appellate Courts
 
 
 
 
 Texas Supreme Court
 
 
 20
 
 
 
 
 Texas Court of Criminal Appeals
 
 
 108
 
 
 
 
 First Court of Appeals (Houston)
 
 
 5
 
 
 
 
 Second Court of Appeals (Fort Worth)
 
 
 1
 
 
 
 
 Fourth Court of Appeals (San Antonio)
 
 
 16
 
 
 
 
 Sixth Court of Appeals (Texarkana)
 
 
 7
 
 
 
 
 Ninth Court of Appeals (Beaumont)
 
 
 4
 
 
 
 
 Tenth Court of Appeals (Waco)
 
 
 7
 
 
 
 
 Twelfth Court of Appeals (Tyler)
 
 
 74
 
 
 
 
 Fourteenth Court of Appeals (Houston)
 
 
 11
 
 
 
 
 Texas Appellate Courts (total)
 
 
 253
 
 


 

In fact, the Texas Court of Criminal Appeals recently
expressly found that Kennedy has abused the writ of habeas corpus by repeatedly
filing applications for such writs raising grounds already rejected—and barred
the filing of future applications by Kennedy without a concomitant showing by
Kennedy that the claims being filed were new claims.  See Ex parte
Kennedy, No. WR-18,555-66 (Tex. Crim. App. Oct. 6, 2010) [ref:  http://www.cca.courts.state.tx.us/opinions/HTMLopinionInfo.asp?OpinionID=20153].

                Kennedy
has also abused the federal system.  Both
the United States Supreme Court and the United States Court of Appeals for the
Fifth Circuit have recognized Kennedy’s misuse of the system and have affirmed
sanctions against him or limited his access to those courts.  See,
e.g., In re Kennedy, 525 U.S.
153, 154 (1999) (per curiam); Kennedy v.
Dist. Court of Tex., Anderson County, 525 U.S. 884 (1998); Kennedy v. Garner, No. 92-8283 (5th Cir.
Mar. 4, 1993) (not designated for publication) (appeal from W.D. Tex.)
[ref:  ftp://opinions.ca5.uscourts.gov/
unpub/92/ 92-8283.0.wpd.pdf]; Kennedy
v. Burkett, No. 92-8469 (5th Cir. July 12, 1993) (per curiam) (not
designated for publication) (appeal from W.D. Tex.) [ref:  ftp://opinions.ca5.uscourts.gov/unpub/92/92-8469.0.wpd.pdf].

 





[3]Kennedy’s
lawsuit was brought along with a claim of inability to pay costs.  Therefore, he was also required to file a separate
affidavit or declaration identifying each suit that he had previously
brought.  Such an affirmation exists in
this case.  It states that he has not
filed a lawsuit against any of these parties. 
That is obviously untrue:  he had
filed such suits multiple times against the district judges, and they were
necessarily aware of the filings. 
Further, the affidavit is to contain a list “identifying each suit . . .
previously brought by the person.”  Tex. Civ. Prac. & Rem. Code Ann. §
14.004(a)(1) (Vernon 2002).  This
declaration does not meet that requirement. 
It is also, in light of the extensive history of lawsuits filed by this
individual, an obvious and blatant untruth. 
That was not, however, the stated reason that the trial court dismissed
the lawsuit.

 





[4]Kennedy
has a second appeal before this Court, bearing our case number 06-10-00120-CV,
also decided this day.  He filed a single
brief covering both appeals.





[5]Kennedy v. State, 12-08-00246-CR (Tex.
App.—Tyler Dec. 16, 2009, pet. denied). 
The petition for discretionary review was disposed of by the Texas Court
of Criminal Appeals April 15, 2010, and its mandate issued April 30, 2010.  The new sentencing hearing was held January
26–27, 2011.  Kennedy’s original sentence was sixty-two
years’ incarceration; the sentence imposed in the second sentencing hearing was
ninety-nine years.





[6]Kennedy’s
briefing does not separately attack any failure to follow recusal procedures by
the judge, but his statement for recusal was neither the subject of a motion as
contemplated by Rule 18a of the Texas Rules of Civil Procedure, nor was the
pleading verified as required by the rule. 
Thus, the mandatory provisions requiring recusal were not
triggered.  Vargas v. State, 883 S.W.2d 256 (Tex. App.—Corpus Christi 1994, pet.
ref’d).  When a recusal motion is filed,
the trial judge against whom the motion is directed may properly make an
initial decision of whether the motion conforms with Rule 18a.  Barron
v. State Atty. Gen., 108 S.W.3d 379, 382 (Tex. App.—Tyler 2003, no pet.); Moorhead v. State, 972 S.W.2d 93, 95
(Tex. App.—Texarkana 1998, no pet.). 
“Recusal may be waived if it is not raised by a proper motion.”  McElwee
v. McElwee, 911 S.W.2d 182, 186 (Tex. App.—Houston [1st Dist.] 1995, writ
denied).  The procedural requisites for
recusal in Rule 18a(a) are mandatory, and a party who fails to conform waives
his right to complain of a judge’s failure to recuse himself.  Spigener
v. Wallis, 80 S.W.3d 174, 180 (Tex. App.—Waco 2002, no pet.); Gill v. Tex. Dep’t of Criminal Justice, Inst.
Div., 3 S.W.3d 576, 579 (Tex.
App.—Houston [1st Dist.] 1999, no pet.);
Pena v. Pena, 986 S.W.2d 696, 701 (Tex. App.—Corpus Christi 1998, pet.
denied).  Thus, the provisions of Rule
18a obligating a trial judge to either recuse himself or herself or refer the
motion to the presiding judge of the administrative judicial district never
come into play unless and until a formal, timely, written, and verified motion
to recuse is filed.  Spigener, 80 S.W.3d at 180; Moorhead,
972 S.W.2d at 95; Limon v. State, 632
S.W.2d 812, 815–16
(Tex. App.—Houston [14th Dist.] 1982, pet. ref’d).





[7]The
records of the underlying conviction show that Kennedy filed a pro se PDR on
January 28, 2010.  They also show that he
presented approximately 125 documents to the Tyler Court of Appeals as motions
in connection with that appeal.

 





[8]The
first defendant’s name here listed by Kennedy, Wortham, is a misspelling or
misnomer.  Kennedy apparently intended to
name the Chief Justice of the Twelfth Court of Appeals in Tyler, the Honorable
James Worthen.





[9]Kennedy
has recently been incarcerated within the Twelfth Appellate District.  The justices of the Twelfth Court of Appeals
recused themselves from the cases and the Texas Supreme Court transferred them
to this Court.  We are unaware of any
conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex. R. App. P. 41.3.





[10]A
civil conspiracy consists of an agreement by two or more persons to act in
combination to accomplish an unlawful purpose or to accomplish a lawful purpose
by unlawful means which results in damages to another.  Schlumberger
Well Surveying Corp. v. Nortex Oil & Gas Corp., 435 S.W.2d 854 (Tex.
1968); Eckman v. Centennial Sav. Bank,
757 S.W.2d 392, 398 (Tex. App.—Dallas 1988, pet. denied).